## SAGINAW GAS-LIGHT CO. *v.* CITY OF SAGINAW and another.

*(Circuit Court, E. D. Michigan.* September 7, 1886.)

1. CIRCUIT COURT—JURISDICTION—CITIZENSHIP.

    Circuit courts can acquire no jurisdiction by reason of citizenship, unless all the plaintiffs are citizens of different states from all or any of the defendants.

2. SAME—FEDERAL QUESTION.

    Where two corporations, chartered under a state law, hold conflicting grants from a municipality, which was also chartered by the legislature, a case is presented "arising under the constitution or laws of the United States," of which the circuit court has original jurisdiction, independent of the citizenship of the parties.[1]

3. GAS COMPANIES — MUNICIPAL ORDINANCE — EXCLUSIVE RIGHT TO LIGHT STREETS.

    Authority "to cause the streets of a city to be lighted," and to make "reasonable regulations" with reference thereto, does not empower the city government to grant to one company the exclusive right to furnish gas for 30 years.

4. SAME — CONTRACT WITH ANOTHER COMPANY TO LIGHT STREETS WITH ELECTRICITY.

    The exclusive right to light a city with gas for 30 years is not legally "impaired" by a subsequent contract with another company to light the streets with electricity.

In Equity.    On motion for preliminary injunction.

This was a bill by the Saginaw Gas-light Company to enjoin the city of Saginaw from entering into a contract with an electric light company to light its streets.

The facts of the case were substantially as follows:

On the twenty-second of April, 1868, the common council of the city of Saginaw passed an ordinance, in which, after reciting that it was desirable that the city should be lighted with gas, and that, to induce any company to erect gas-works, lay down gas-pipes, and furnish a supply of gas, it was necessary to grant to such company certain exclusive rights and privileges, it was enacted "that the exclusive right and privilege of erecting, maintaining, and continuing and operating gas-works within said city. * * * and the exclusive right and privilege of manufacturing gas in said city for sale for lights, and of selling the same, and of supplying the inhabitants of said city, etc., be, and is hereby, granted to" four individuals, (naming them,) for 30 years: provided, that they should, within 30 days after the passage of the ordinance, organize a corporation, file a copy of their articles of association, and their acceptance of the ordinance, and agreements to perform on their part, according to the terms and conditions thereof, to supply gas for lights; to erect, within one year and six months, permanent and sufficient gas-works in said city; to lay down in the streets thereof at least 9,000 feet of main pipe; and to supply, and to continue to supply, gas to all persons along the line of said main pipe who should require it, and conform to the rules of the company, and pay for the same at the rates provided for in said ordinance.

Within 30 days from the passage of this ordinance the four individuals named as grantees proceeded to organize a gas company, as required by the terms of the ordinance, under the name of the Saginaw Gas-light Company, the plaintiff in this bill. The company was organized, erected gas-works within the time required, and expended somewhat over $75,000 in laying

[1] See note at end of case.

pipes and in erecting works, and in all other respects complied with the ordinance; and, within the 30 days required, filed with the recorder of the city a copy of its articles of association, and its acceptance of the ordinance.

On July 6, 1871, the city passed a further ordinance, making a contract with the plaintiff to furnish gas for the public lamps for that city, to commence on the eighth day of July, 1871; and which, after providing terms, price, and conditions upon which the lighting was to be done, contained this further stipulation: "This proposition, if accepted, to remain in force until the first day of January, 1873, and to be considered as renewed from year to year, unless either party gives notice to the other of their desire to terminate the same, not less than 30 days previous to the first day of January of any year;" and a further stipulation that "this ordinance shall be construed as a contract between said city and said Saginaw Gas-light Company;" and a further stipulation that "nothing in this ordinance contained shall be construed so as to release said gas-light company from the operation, effect, and obligations of the ordinance of said city adopted April 22, 1868," etc.

Both of said ordinances continued to remain in force, and no attempt was ever made to terminate them, or either of them, by notice or otherwise. The plaintiff always complied with the regulations of the common council, and the terms of these ordinances, and no claim was ever made of any failure on its part to comply with the conditions of the ordinances, or to keep its works, pipes, and meters in good repair; or of any failure to supply the city of Saginaw, or its inhabitants, with a good article of burning gas, of as good quality as was furnished by other companies to cities similarly situated.

On the twenty-first day of July, 1886, the common council passed another resolution, accepting a proposition which had previously been made by the said Fort Wayne Jenney Electric Light Company, granting permission to that company to purchase a location, to erect buildings, and put up a plant in the said city of Saginaw, for city and commercial lighting; and made a contract with that company to light the public streets of Saginaw with electric light.

The claim of the plaintiff was:

(1) That the city of Saginaw, under its charter, was charged with the duty of lighting its public streets and buildings, and had the power to contract with others to furnish the means of obtaining gas, and to pass the ordinances of 1868 and of 1871, giving the plaintiff the exclusive right to furnish gas for 30 years, and imposing upon it a corresponding obligation to do so; and that, by the terms of those ordinances, it adopted gas as its light for public and private use.

(2) That the ordinance of 1871 constituted a contract between the city of Saginaw and plaintiff, still in force and binding upon both parties.

(3) That the exclusive gas franchise conferred by the ordinance of 1868 was, in effect, an exclusive *light* franchise, and could not be defeated by the introduction of naphtha lamps, electric lights, or any other substitute, because the substantial right secured by the company under the ordinance was to furnish light for the public streets and buildings, and for the inhabitants of the city, and the introduction of any other light besides gas was fatal to the benefits intended to be conferred by the ordinance.

*Wheeler & McKnight*, for plaintiff.
*Benton Hanchett*, for the City of Saginaw.
*Perry A. Randall*, for the Electric Light Co.

BROWN, J.   A preliminary objection to the jurisdiction of the court in this case demands our first consideration.   That no jurisdiction

is acquired by reason of the citizenship of the parties is too clear for argument. The plaintiff and the city of Saginaw (the principal defendant) are citizens of the same state, and the fact that another party, viz., the Fort Wayne Jenney Electric Light Company, a citizen of Indiana, is also joined as defendant, is insufficient. Under the original judiciary act of 1789, which conferred upon the circuit courts jurisdiction of all suits "between a citizen of the state where the suit is brought and a citizen of another state," it was uniformly held that, if there were several co-plaintiffs, each plaintiff must be competent to sue, and, if there were several co-defendants, each defendant must be liable to be sued, in the federal court, or jurisdiction could not be entertained. While the designation of party "plaintiff" or "defendant" was in the singular number, it was intended to embrace all persons who were on one side, however numerous; so that each distinct interest must be represented by persons all of whom were entitled to sue, or were liable to be sued, in the federal court. *Strawbridge* v. *Curtiss*, 3 Cranch, 267; *Coal Co.* v. *Blatchford*, 11 Wall. 172.

In section 1 of the act of 1875 the phraseology is but slightly changed, and jurisdiction given of "controversies" "between citizens of different states;" but the construction of the act is the same, except that the court may examine the record, and rearrange the parties upon different sides of the actual "controversy" or the real matter in dispute. *Pacific R. R.* v. *Ketchum*, 101 U. S. 289, 297; *Teal* v. *Walker*, 10 Ch. Leg. News, 131.

The same language is used in first clause of the second section of the same act, providing for the removal of cases from state courts, and to this language a like construction has been given in a large number of cases. *Removal Cases*, 100 U. S. 457; *Blake* v. *McKim*, 103 U. S. 336; *Shainwald* v. *Lewis*, 108 U. S. 158; S. C. 2 Sup. Ct. Rep. 385; *Hyde* v. *Ruble*, 104 U. S. 407.

As there is no doubt that the parties in this cause are properly arranged upon the record, the jurisdiction must fail, unless it can be supported upon some other ground.

It is insisted, in this connection, that the suit is one "arising under the constitution or laws of the United States," within the meaning of the act of 1875, and that, therefore, this court may take cognizance of the case independent of the citizenship of the parties. Granting the premises, plaintiff's conclusion therefrom is undoubtedly correct. Its claim is that the resolution of the common council of the city of Saginaw adopted July 21, 1886, accepting the proposition of the electric light company, granting permission to that company to purchase a location, to erect buildings, and to put up a plant in said city, and contracting with the company to light the public streets of the city with electric lights, is a practical repudiation of its contract with the plaintiff, and a violation of the constitutional provision that "no state shall pass any law impairing the obligations of contracts." If

the decision of the case is dependent upon the proper construction of this clause of the constitution, there can be no doubt of our jurisdiction. *Gold-washing Co.* v. *Keyes,* 96 U. S. 199; *Railroad Co.* v. *Mississippi,* 102 U. S. 135, 141; *Levy* v. *Shreveport, ante,* 209.

But if the case be not one of this class,—in other words, if the resolution of the common council in question be not a "state law," within the meaning of this clause,—then we cannot be called upon to determine whether it impairs the obligation of plaintiff's contract. To illustrate: If the plaintiff corporation had received its franchise directly from the state legislature, and the electric light company had also received its franchise of July 21, 1886, from the same body, there could be no question that the consonance of this action with the above clause of the constitution would be directly put in issue by this case. Suits arising upon conflicting legislative grants of this description are of frequent occurrence, and have been uniformly held to be cognizable in the federal courts. *State Bank* v. *Knoop,* 16 How. 369; *Providence Bank* v. *Billings,* 4 Pet. 561; *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420; *Richmond, etc., R. Co.* v. *Louisa R. Co.,* 13 How. 81; *New Jersey* v. *Wilson,* 7 Cranch, 164; *New Orleans Gas Co.* v. *Louisiana Light Co.,* 115 U. S. 650; S. C. 6 Sup. Ct. Rep. 252; *Louisville Gas Co.* v. *Citizens' Gas Co.,* 115 U. S. 683; S. C. 6 Ct. Rep. 265.

Upon the other hand, it is equally clear that if the city of Saginaw possessed no greater powers than those of any private corporation, its action in passing the resolution of July 21st would have amounted to nothing more than the breach of an ordinary contract with the plaintiff, and would have involved no question of legislative power. It is only where a party is acting under authority of a "state" that his action can be obnoxious to the clause in question, prohibiting "states" from impairing the obligations of contracts. In the absence of this clause, a state might enact laws which would have that effect. This is one of the attributes of complete sovereignty, and the power to do this has more than once been exercised by the imperial parliament of Great Britian, and by other sovereign bodies,—notably in the recent Irish land act; but no one will pretend it can be done by an individual, or a private corporation. Hence it is the act of a sovereign state upon which this clause is intended to operate. As to all other bodies or persons, the provision is unnecessary. Thus, we have no jurisdiction to inquire whether the political body which passed a particular statute was in fact a "state" legislature, within the meaning of this clause. *Scott* v. *Jones,* 5 How. 343. Nor to determine whether the law of a territorial legislature impairs the obligations of a contract. *Miners' Bank* v. *Iowa,* 12 How. 1; *Messenger* v. *Mason,* 10 Wall. 507. Nor is the authority conferred by a state statute upon its supreme court to hear and determine cases the kind of authority referred to in the judiciary act, which gives the federal supreme court the right to review its decisions where is drawn in question the va-

lidity of a statute, or an authority exercised under any state. *Bethell v. Demaret*, 10 Wall. 537.

As was said by Mr. Justice MILLER in *Railroad Co.* v. *Rock*, 4 Wall. 177, 181: "It must be the constitution, or some law of the state, which impairs the obligation of a contract, or which is otherwise in conflict with the constitution of the United States." See, also, *Knox* v. *Exchange Bank*, 12 Wall. 379; *Tarver* v. *Keach*, 15 Wall. 67.

But if the authority exercised be that of the state itself, whether acting directly through its legislature, or indirectly through a subordinate body, to which the legislature has delegated a portion of its powers, it is competent for this court to inquire whether it has exceeded its authority, and violated the constitutional provision in question.

Thus, in the case of *Weston* v. *City of Charleston*, 2 Pet. 462, a municipal ordinance of the city of Charleston was held to be the exercise of "an authority under the state of South Carolina, the validity of which might be drawn in question by the supreme court on the ground of its repugnancy to the constitution.

In *Wright* v. *Nagle*, 101 U. S. 791, the jurisdiction of the court was sustained upon the following state of facts: An inferior state court had entered into a contract granting to the plaintiff the exclusive right of opening ferries and building bridges over a certain river. Subsequently the commissioners of roads and revenues for the same county authorized the defendants to erect and maintain a toll-bridge across the same river within the limits of the original grant to plaintiff. The bill averred that the commissioners, in making and granting such franchise, exercised legislative powers conferred upon it by the statute; that the grant was in the nature of a statute of the legislature, and was an infringement of the grant to the plaintiff, and impaired the obligation of his contract. On motion to dismiss the case because no federal question was involved, the court held that the legislature of the state alone had authority to make the grant, but that it might exercise this authority by direct legislation, or through agencies duly established, having power for that purpose; that the grant, when made, was directly or indirectly the act of the state; and that the court had jurisdiction to inquire whether the grant so made impaired the obligation of the prior contract with the plaintiff. Upon a careful consideration of this case, we have come to the conclusion that it is controlling here, and decisive in favor of our jurisdiction.

The general law authorizing the formation of gas-light companies, under which both the plaintiff corporation and the electric light company were organized, provides that (Laws 1871, § 2908) "such corporation shall have power to lay conductors, etc., with the consent of the municipal authorities of said city, town, or village, under such reasonable regulations as they may prescribe." In enacting such regulations, then, the common council is acting under the authority of the state, and the question of their consonance with the consti-

tutional provision above quoted is as properly cognizable in this court as if the two companies received their entire power and franchises directly from the state.

As incident to the constitutional question, we are also at liberty to inquire whether, admitting that the common council granted an exclusive franchise to the four persons named in the resolution, it had the power to do this under its charter. *Wright* v. *Nagle*, 101 U. S. 791. What, then, were the powers of the common council in this particular? The answer must be found either in the city charter, in the general law authorizing the formation of gas companies, or be inferred from the powers expressly granted in these acts. But the charter of 1867, under which the city was incorporated at the time it granted the franchise to plaintiff, is silent upon this subject. In enumerating the powers and duties of the common council, in section 10 of this charter, no mention whatever is made of a power to light the streets; and it was not until 1871 that the act was so amended as to authorize the common council "to cause the streets, lanes, and alleys to be lighted." 2 Laws 1871, p. 424. In view of this fact, we find it difficult to see how the ordinance of 1868 can be supported.

We understand the law to be perfectly well settled, as stated by Judge DILLON in his admirable work upon Municipal Corporations, § 89, that "a municipal corporation possesses and can exercise the following powers, and no others: (1) Those granted in express words; (2) those necessarily or fairly implied, or incident to the powers expressly granted; (3) those essential to the declared object and purposes of the corporation, not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation, the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby. All acts beyond the scope of the powers granted are void." While lighting the streets of a city is undoubtedly greatly conducive to the comfort and convenience of its inhabitants, it is by no means indispensable to a city government, nor is it one of those incidental powers which are sometimes implied from other powers expressly conferred.

But conceding, for the purposes of the case, that the ordinance of 1871, which was passed after the act of 1871 amending the charter had taken effect, was a recognition and adoption of the ordinance of 1868, it remains to be considered whether, at this time, the common council had the power to confer an exclusive franchise upon the plaintiff to light its streets with gas for 30 years. That the state, in its sovereign capacity, may grant a monopoly of this description, and that such monopolies will be protected against a subsequent conflicting grant, has lately been settled by the supreme court in *New*

*Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650, S. C. 6 Sup. Ct. Rep. 252, and *Louisville Gas Co.* v. *Citizens' Gas Co.*, 115 U. S. 683, S. C. 6 Sup. Ct. Rep. 265. But whether, under a charter simply authorizing a municipal corporation "to cause its streets to be lighted," it may grant an exclusive privilege of this description, for a term of years, is a widely different question. Bearing in mind that the powers of the municipality are strictly limited by its charter, it is needful to inquire whether the grant of an exclusive franchise is a proper and reasonable method of exercising its authority to light the public streets, and furnish gas to its inhabitants. We think it entirely clear that the city is not bound to manufacture and furnish the gas itself, but may contract with any individual or company for lighting the city, and, as an incident thereto, may authorize the use of its streets for laying pipes and mains. Indeed, this is not only a usual and convenient mode of exercising its power, but, in the general law for the organization of gas companies, it is expressly provided that such corporation shall have power to lay conductors, etc., with the consent of the municipal authorities of such city, town, or village, under such reasonable regulations as they may prescribe. There is here an implied, if not an express, authority for the city to contract with any corporation which may be organized under the act.

It is clear, however, that there is no authority expressly given to confer upon any corporation an exclusive right to occupy its streets for a number of years. It is true, it may, in effect, grant such exclusive right by refusing to any other company the franchise or privilege it has already granted to one; but this presupposes a continued and abiding consent on the part of the city to keep alive its contract, and is quite distinct from the right of the city to surrender its power to make another contract, and to vest in the plaintiff the right to determine for itself whether a rival company shall be permitted to enter its domain. While there is great force in plaintiff's argument that individuals would not be likely to incur the great expense of establishing gas-works and laying pipes without some assurance of a profitable and continued employment for a sufficient length of time to remunerate them for their outlay, we think the law is too well settled that this cannot be done, without express permission of the sovereign power, to be now disturbed. If a grant of this kind for 30 years may be supported, why may it not, by parity of reasoning, be upheld for a hundred years, or in perpetuity?

The common law of England declares that monopolies cannot emanate from the crown, and can only be conferred by act of parliament, (Bac. Abr. tit. "Monopoly,") and a by-law which creates a monopoly is void, (Jac. Law Dict.)

The great weight of authority in this country is in the same direction. Thus, in *Norwich Gas Co.* v. *Norwich City Gas Co.*, 25 Conn. 19, a municipal ordinance, purporting to grant the exclusive privilege of laying gas-pipes through the streets of a city for a period of 15

years, was held to give the grantee no interest in the soil, and no title which would enable him to restrain another company from doing the same thing, provided it did not interfere with his works. The court went even further,—beyond what we believe now to be the accepted doctrine,—and held that the business of manufacturing and selling gas was an ordinary business, in respect to which the government had no exclusive prerogative, and that the legislature itself had no power to amend the plaintiff's charter, so as to give it the exclusive privilege claimed.

We are not, however, without the direct authority for our proposition that nothing will be intended from a legislative grant to a municipal corporation.

In *Minturn* v. *Larue*, 23 How. 435, it was held that a charter authorizing the city of Oakland to establish and regulate ferries, or to authorize the construction of the same, gave no power to the city to grant an exclusive privilege. In delivering the opinion Mr. Justice NELSON observed:

"It is a well-settled rule of construction of grants by the legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act, or derived therefrom by necessary implication, regard being had to the objects of the grant. Any ambiguity or doubt arising out of the terms used by the legislature must be resolved in favor of the public."

In the case of *Wright* v. *Nagle*, 101 U. S. 791, to which reference has already been made, it was held that legislative power given to an inferior body to establish ferries and bridges did not authorize such body to grant the exclusive right to one person, though there was no doubt that the legislature itself had authority to make such a grant. The case is upon all fours with the one under consideration.

The same question was argued with great skill and thoroughness in *State* v. *Cincinnati Gas-light & Coke Co.*, 18 Ohio St. 262. In this case the charter conferred on the gas company power "to manufacture and sell gas, to lay pipes," etc., provided the consent of the city council be obtained for that purpose. Under a power given to the city council of Cincinnati "to cause said city, or any part thereof, to be lighted with oil or gas," and to levy a tax for that purpose, it contracted to invest the defendant with the full and exclusive privilege of using the streets, etc., for the purpose of lighting the city for the term of 25 years, and thereafter, until the city should purchase the works. It was held that, while there was no doubt that the city might by contract provide for lighting by gas, there was no necessity for making such right exclusive, and that the city had no authority to make the grant.

So, in *Richmond Co. Gas-light Co.* v. *Middletown*, 59 N. Y. 228, the board of the town corporation was authorized to cause the streets to be lighted with gas whenever they deemed it necessary, and required the board to contract with the plaintiff company to supply the same with

gas. This was held by the court of appeals not to confer the power on the board to make a contract which should be binding on the town for a fixed term of years, and that the contract was terminated by the repeal of the act under which it was made.

Other analogous cases are to the same effect:

*Logan* v. *Pyne*, 43 Iowa, 524, in which an exclusive grant to one person to run omnibuses was held not to be the valid exercise of a power to "license, tax, and regulate omnibuses."

*Jackson County Horse R. Co.* v. *Rapid Transit Co.*, 24 Fed. Rep. 306. In this case it was held by Judge BREWER that, in the absence of express authority in its charter, the city of Kansas had no power to grant to a street railway company the sole right, for the space of 21 years, to construct, maintain, and operate their railway over and along the streets of the said city.

The only case to which our attention has been called, which points in the other direction, is that of *City of Newport* v. *Newport Light Co.*, 8 Ky. Law Rep. 22. In this case the charter of the Newport Light Company provided that "it might furnish any city * * * with gas, or other lights, for such time, and upon such terms, as may be agreed upon by the parties;" while the charter of the city of Newport empowered that municipality "to construct, maintain, and operate gas-works, and to pass all ordinances necessary to regulate the same." It was held that under these acts a grant to the light company of an exclusive privilege of using its streets, etc., for the purpose of laying pipes, for 25 years, was a valid exercise of its power. It was said that, being invested with the right to light its streets with gas, or to construct and maintain gas-works for that purpose, its right to contract under such power was unquestioned; and that, when there was a valid contract to that effect, there was no reason why it should not be enforced or governed by the same rules applicable to contracts between natural persons. We think, however, the court erred in treating the cases in Ohio and Connecticut as being inconsistent with the recent cases in the supreme court of the United States, wherein the franchises of the New Orleans and Louisville Gas Companies were upheld, and in overlooking the distinction between the grant of a monopoly by the legislature of the state, possessing sovereign powers in that particular, and the bestowal of a like monopoly by the common council of a city, whose powers are strictly limited by its charter. We think the statement of the court that the question was one of contract, or of the right to contract, must be taken with the qualification that the power to contract with one company is not of such a character as to deprive the city of its power to contract with another. It is the very power to contract which the city bargains away and relinquishes by the grant of a monopoly for a term of years, and this, it seems to us, it cannot do. *Gale* v. *Kalamazoo*, 23 Mich. 344; *Mayor of N. Y.* v. *Second Ave. R. R.*, 32 N. Y. 261.

The power to contract, even in the hands of a private individual, is limited by law, and does not extend to such contracts as are against public policy, in restraint of trade or marriage, opposed to the revenue laws, or which tend to corrupt legislation. Much more is this power limited when one of the contracting parties is a corporation, with rights strictly defined by its charter. Experience has not shown that the creation of a monopoly of this description is ordinarily necessary to procure the proper lighting of a city, a proper supply of water, or the needful railway facilities for its streets. If private individuals are reluctant to undertake such enterprises, the city may either establish its own gas-works, and thus create a monopoly for the benefit of its own citizens, or procure special authority from the legislature to enter into a contract for a definite term of years.

But, conceding this franchise to have been legally granted, there is another obstacle no less formidable to the maintenance of this bill. The grant in this case is of an exclusive right "to maintain and operate gas-works, to lay gas-pipes through the streets, and to supply the city and its inhabitants with gas. It is not the exclusive privilege of lighting the city, but of lighting it with gas, that is contemplated. There is nothing to prevent the city from using oil, electricity, or any other means of illumination, except gas. At the time this ordinance was passed the employment of gas was the favorite and only effectual means of lighting a city, and it was undoubtedly supposed by both parties that it would continue to be so. But in the progress of human science another method has been invented, which bids fair to supersede the old one, and the city may well claim that it ought not to be deprived of the benefits of the latest discoveries in that direction. Suppose, before the employment of gas as an illuminator, a city had contracted with an individual to light its streets with oil for 50 years, would it not be a hardship to claim that it was thereby debarred of availing itself of the later invention? We think it would require the most explicit and unequivocal language to justify this interpretation. Had the contract been for lighting the city generally, there would be plausibility in claiming that the grantee was invested with a monopoly of all forms of illumination. But these ordinances evidently contemplated that some might prefer, upon the ground of economy or otherwise, to light their houses with oil or candles, and reserved the right to do so.

In this connection we are referred to a recent case decided by a Bavarian court, in relation to lighting the city of Munich, in which it seems to have been held that good faith requires that a contract by a city to have its streets lighted with gas should be extended to all forms of illumination. In delivering the opinion the learned judge observed:

"There has been an effort made to lay weight on the point that the lighting of the streets with gas was conceded to the company, that this did not hinder the introduction of electric lighting, since this could take place with-

out violating the conditions of section 4. This interpretation is entirely contrary to good faith,—*bona fides.* But, besides that, the city has bound itself, for thirty-six years, to have the streets lighted with gas, and must do this in fulfillment of the contract, since a contrary behavior would involve a flagrant breach of the contract. * * * It is fully evident that the gas company undertook, for thirty-six years, the obligation of lighting the streets and squares of Munich with gas, and that the city is bound for the time agreed upon to allow the lighting of the city to be done by the gas company exclusively."

We cannot assent to a similar interpretation of the franchise in this case. The city does not obligate itself to take any particular quantity of gas, or to continue the exclusive employment of gas for a definite period. The contract between the city of Munich and the gas company is not set forth in the opinion, but the language would indicate that the city bound itself in terms to have its streets lighted with gas. If this be so, the case differs very materially from the one under consideration, and the opinion is entitled to no weight. If there were a simple concession to the company of an exclusive privilege of lighting the city with gas, the case is undoubtedly authority for the plaintiff's contention; but, in explanation, it should be observed that the civil law prevails in the kingdom of Bavaria, and by that law grants made by the sovereign are regarded with favor, and are given a large and liberal interpretation.

In Domat's Rules for the Interpretation of Laws it is said, rule 17:

"The grants and gifts of the sovereign are to be favorably regarded, and to have that extension to which they are entitled from the natural presumption of princely liberality: provided, however, that they are not to be so liberally construed as to injure other individuals."

It is scarcely necessary to say that, in the jurisprudence of Anglo-Saxon communities, gifts of the sovereign are treated with less consideration, and a totally different rule of interpretation obtains. Nothing is better settled than that statutes creating monopolies, granting franchises, and charters of incorporation, must be construed liberally in favor of the public, and strictly as against the grantee. Monopolies are justly regarded as encroachments upon the natural rights of the people, and are viewed with jealousy by courts. Whatever is not equivocally granted in such act is taken to have been withheld. All acts of incorporation, and acts extending the privileges of incorporated bodies, are to be taken most strongly against the companies. Sedg. St. Law, 339.

In regard to the rights of franchises, it is said by the supreme court that, where the grant is designed by the sovereign power to be a general benefit and accommodation to the public, if the meaning of the words be doubtful, they shall be taken most strongly against the grantee and for the government, and therefore the grant is not to be extended, by implication, in favor of the grantee, beyond the obvious and natural meaning of the words employed. Other authorities, putting it sententiously, say that a doubt is fatal to a grant. Thus,

where an act of parliament imposed a penalty on all but freemen of the Waterman's Company, for navigating any wherry, lighter, or *other craft*, on the Thames, it was held that a steam-tug was not within the description and prohibition of the act. "A corporation is strictly limited to the exercise of those powers which are specially conferred upon it. The exercise of a corporate franchise, being restrictive of individual rights, cannot be extended beyond the letter and the spirit of the act of incorporation." *Beaty* v. *Lessee of Knowler*, 4 Pet. 152, 168.

But it is useless to multiply authorities in support of this proposition. The general principle is too firmly established to admit of argument. Its application to this case, we think, is entirely clear. The plaintiff took nothing by its franchise but the privilege of lighting the streets with gas, and this it will continue to enjoy so far as its patrons prefer the use of gas to electricity. But its claim to the exclusive privilege of lighting the city by all methods of illumination cannot be supported upon legal principles, and the injunction must therefore be denied.

NOTE.

As to the jurisdiction of the circuit court arising from questions involving the validity of state laws impairing the obligation of contracts, see Starin v. City of New York, 6 Sup. Ct. Rep. 28; Leonard v. City of Shreveport, 28 Fed. Rep. 257; Levy v. Same, Id. 209; New Orleans W. W. Co. v. St. Tammany W. W. Co., 14 Fed. Rep. 194; Sawyer v. Parish of Concordia, 12 Fed. Rep. 754, and note, 761; State of Illinois v. Illinois Cent. R. Co., 16 Fed. Rep. 881; Illinois v. Chicago, B. & Q. R. Co., Id. 706; Chaffraix v. Board of Liquidation, 11 Fed. Rep. 638.

As to laws impairing the obligations of contracts, see Fisk v. Police Jury of Jefferson, 6 Sup. Ct. Rep. 329; Louisville, G. Co. v. Citizens' G. L. Co., Id. 265; New Orleans W. W. Co. v. Rivers, Id. 273; New Orleans G. L. Co. v. Louisiana I. Co., Id. 252; Effinger v. Kenney, Id. 179; Louisiana v. Police Jury of St. Martin, 4 Sup. Ct. Rep. 648; Louisville & N. R. Co. v. Palmes, 3 Sup. Ct. Rep. 193; State of Tennessee v. Whitworth, 22 Fed. Rep. 79, 81; Illinois Cent. R. Co. v. Stone, 20 Fed. Rep. 468; Farmers' L. & T. Co. v. Stone, Id. 270; Wells v. Oregon Ry. & N. Co., 15 Fed. Rep. 561; New Orleans W. W. Co. v. St. Tammany W. W. Co., 14 Fed. Rep. 194; U. S. v. Port of Mobile, 12 Fed. Rep. 768, and note; Sawyer v. Parish of Concordia, Id. 754, and note; Crescent City, etc., Co., v. Butchers' Union, etc., Co., 9 Fed. Rep. 743; Burton v. Koshkonong, 4 Fed. Rep. 343; Grand Rapids Sav. Bank v. Warren, (Mich.) 18 N. W. Rep. 356; State v. Young, (Minn.) 9 N. W. Rep. 737; In re Head-notes to Opinions, (Mich.) 8 N. W. Rep. 552; Boice v. Boice, (Minn.) 7 N. W. Rep. 687; People v. Hull, (Colo.) 9 Pac. Rep. 34; McGee v. City of San Jose, (Cal.) 8 Pac. Rep. 641; Northern Pac. R. Co. v. Carland, (Mont.) 3 Pac. Rep. 134.

As to laws which do not impair the obligation of contracts, see Vicksburg, S. & P. R. Co. v. Dennis, 6 Sup. Ct. Rep. 625; Chesapeake & O. Ry. Co. v. Miller, 5 Sup. Ct. Rep. 813; Butchers' Union, etc., Co., v. Crescent City, etc., Co., 4 Sup. Ct. Rep. 652; Spring Valley W. W. v. Schottler, Id. 48; Smith v. Greenhow, 3 Sup. Ct. Rep. 421; Gilfillan v. Union Canal Co., Id. 304; State v. City of New Orleans, Id. 211; Memphis G. L. Co. v. Taxing District of Shelby Co., Id. 205; Shiner v. Jacobs, (Iowa,) 17 N. W. Rep. 613; County of Kossuth v. Wallace, (Iowa,) 15 N. W. Rep. 305; Reithmiller v. People, (Mich.) 6 N. W. Rep. 667; Miller v. Kister, (Cal.) 8 Pac. Rep. 813; City of Los Angeles v. Southern Pac. R. Co. (Cal.) 7 Pac. Rep. 819.

The constitutional prohibition on state laws impairing the obligation of contracts does not restrict the power of the state to protect the public health, the public morals, or the public safety, as the one or the other may be involved in the execution of such contracts. New Orleans G. L. Co. v. Louisiana L. Co., 6 Sup. Ct. Rep. 252; Butchers' Union, etc., Co., v. Crescent City, etc., Co., 4 Sup. Ct. Rep. 652. But a provision in a charter by which the state bargains away any of the powers of sovereignty, as that of eminent domain, is void, and the constitutional protection of the obligation of contracts does not apply. Village of Hyde Park v. Oak Woods Cemetery-Ass'n, (Ill.) 7 N. E. Rep. 627.