## WRIGHT v. NAGLE.

1. This court follows the decision of the Supreme Court of Georgia, that authority to grant the franchise of establishing and maintaining a toll-bridge over a river where it crosses a public highway in that State, is vested solely in the legislature, and may be exercised by it, or be committed to such agencies as it may select.

2. The construction by the State court of a statute under which a court made an exclusive grant of such franchise within designated limits, upon conditions which the grantee performed, is not conclusive here upon the question whether a subsequent conflicting grant impairs the obligation of a contract.

3. The statutes of Georgia confer upon certain courts the power to establish such bridges, but not to bind the public in respect to its future necessities. The legislature could, therefore, authorize the erection and maintenance of another bridge within the limits of the original grant.

ERROR to the Supreme Court of the State of Georgia.

The facts are stated in the opinion of the court.

*Mr. Fillmore Beall* and *Mr. O. A. Lochrane* for the plaintiffs in error.

*Mr. Joel Branham, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This was a suit in equity brought by Wright and Shorter in

the Superior Court of Floyd County, Georgia, to restrain the defendants from continuing and maintaining a toll-bridge across the Etowah River, at Rome, in that county. The facts are these: In July, 1851, the Inferior Court of Floyd County entered into a contract with one H. V. M. Miller, by which the court, for a good and valuable consideration, granted to Miller and his heirs and assigns for ever, so far as it had authority for that purpose, the exclusive right of opening ferries and building bridges across the Oostanaula and Etowah Rivers, at Rome, within certain specified limits. Miller, on his part, bound himself by certain covenants and agreements appropriate to such a contract. He afterwards assigned his rights under the contract, so that when this suit was commenced the complainants, Wright and Shorter, were the owners. Large amounts of money were expended in building and maintaining the required bridges, and the franchise is a valuable one. In December, 1872, the commissioners of roads and revenue for the county authorized the defendants to erect and maintain a toll-bridge across the Etowah, within the limits of the original grant to Miller. The bill avers that "the said board of commissioners in the making and conferring of said franchise exercised legislative powers conferred upon it by the laws of the State; that the said grant is in the nature of a statute of the legislature; that the same is an infringement of the said grant and contract made by the said superior (inferior) court to and with the said H. V. M. Miller, under whom complainants hold, and impairs the obligation and validity thereof, and is repugnant to the Constitution of the United States, art. 1, sect. 10, par. 1, which prohibits a State from passing any law impairing the obligation of contracts; and the complainants pray that the said grant to said defendants be by this court annulled and declared void, and the defendants perpetually enjoined from any exercise of the privileges thereby conveyed and granted."

There is no dispute about the facts, and in the answer it is expressly stated that the commissioners of roads and revenue "are vested with legislative, or quasi-legislative, powers and exclusive powers on this subject, and, therefore, . . . the order making said bridge and streets public has all the authority, sanction, and effect of an act of the legislature of the State, and

cannot be interfered with by the unauthorized and void act of any public functionary of this State." The parties, by stipulation before the hearing, eliminated every thing from the case except so much as was necessary to obtain " a final and legal decision upon the main question; to wit, whether or not the Inferior Court of Floyd County, Georgia, could and did grant to the complainants, or their assignors, an exclusive franchise, such as is set up and claimed in the complainants' bill, and whether or not, therefore, the subsequent grant of the bridge franchise, described in the pleadings, by the said board of commissioners to the defendants, is or is not valid, and the right of complainants to the relief prayed for." It was also agreed that the defendants had title to the lands on which the piers of the bridge were built.

The Superior Court decided that the inferior court of the county had no power to grant Miller any such exclusive right as was claimed, and for that reason dismissed the bill. This decision was afterwards affirmed by the Supreme Court of the State on appeal, and to reverse that judgment this writ of error was brought.

Accompanying the submission of the case on its merits is a motion to dismiss because no Federal question is involved.

Before proceeding to consider the questions presented by the record, we are called upon to dispose of a preliminary motion. On or before the 6th of December, 1879, the counsel for the respective parties stipulated, in writing, to submit the case on printed arguments under the twentieth rule. The plaintiffs in error ask leave to withdraw their stipulation, and set the cause down for oral argument when reached. We think their showing in support of that motion is insufficient, and that under the rule laid down in *Muller* v. *Dows* (94 U. S. 277) the stipulation must be enforced.

We think, also, that the motion to dismiss must be overruled. It is true, the court below disposed of the case by deciding that the State statutes did not authorize the inferior court to grant Miller an exclusive right to maintain bridges within the designated limits, and that in so doing it gave a construction to a State statute. It is also true that ordinarily such a construction would be conclusive on us. One excep-

tion, however, exists to this rule, and that is when the State
court " has been called upon to interpret the contracts of
States, ' though they have been made in the forms of law,' or
by the instrumentality of a State's authorized functionaries in
conformity with State legislation." *Jefferson Branch Bank* v.
*Skelly,* 1 Black, 436. It has been decided in Georgia that the
right to receive tolls for the transportation of travellers and
others across a river on a public highway is a franchise which
belongs to the people collectively. *Young* v. *Harrison,* 6 Ga.
130. A grant of this franchise from the public in some form is
therefore necessary to enable an individual to establish and
maintain a toll-bridge for public travel. The legislature of the
State alone has authority to make such a grant. It may exer-
cise this authority by direct legislation, or through agencies
duly established, having power for that purpose. The grant
when made binds the public, and is, directly or indirectly, the
act of the State. The easement is a legislative grant, whether
made directly by the legislature itself, or by any one of its
properly constituted instrumentalities. *Justices of Inferior
Court* v. *Plank Road,* 14 id. 486. The complainants claim
they have such a grant through the agency of the inferior
court, acting under the authority of the legislature. This is
denied, because, as is insisted, the legislature has not given the
court power to make an exclusive grant. That was the precise
question decided below, and under the exception to the rule
just stated is reviewable here.

If the court erred in construing the statute, and in holding
that there was no contract, then the question is directly pre-
sented by the pleadings and the stipulation as to the facts,
whether the subsequent action of the commissioners of roads
and revenue is, in its legal effect, equivalent to a law of the
State impairing the obligation of the contract as it was made.
In this way, it seems to us, a Federal question is raised upon the
record, which gives us jurisdiction.

We, therefore, proceed to consider whether the inferior court
had the power to grant Miller the exclusive right. It certainly
has done so, if the power existed. There is no doubt that the
legislature, under the Constitution of the State in force at the
time, had authority to make such a grant. The only question

is, whether power for that purpose had been delegated to the inferior court.

The statutes relied on by the plaintiffs in error as conferring that authority are : —

An act of Dec. 1, 1805 (Cobb's Dig. 945), as follows : —

" The inferior courts in the several counties in this State are hereby empowered, if they shall deem it necessary, on application being made, to authorize the establishment of such ferries or bridges as they may think necessary, other than where ferries and bridges have already been established by law, and to allow such rates for crossing thereat as are usual or customary on watercourses of the same width : *Provided, nevertheless,* that the legislature shall, at all times, retain the power of making such alterations in the establishments made by the justices of the inferior courts as to them may seem proper."

An act of Dec. 19, 1818 (Cobb's Dig. 952) : —

" SECT. 29. The justices of the inferior courts of each county, in this State, or a majority of them, shall have power and authority to hear and determine all matters which may come before them relative to roads, bridges, &c., as are authorized by law, either in term time, or while sitting for ordinary purposes, or at any special meeting held for that purpose."

" SECT. 33. The inferior courts shall have power to establish ferries, to rate the toll to be taken, as well those already established as any which may hereafter be established, within the several counties within which they may severally reside; and, generally, all other matters relative to ferries which may, in their judgment, be of public utility, any law to the contrary notwithstanding."

An act of Dec. 26, 1845 (Cobb's Dig. 958) : —

" That the justices of the inferior court of the several counties in this State, or a majority of them, be and they are hereby authorized to contract for the building and keeping in repair of public bridges for such time and in such way as they may deem most advisable, either by letting the same to the lowest bidder, hiring hands for that purpose, or in any other way that to them may appear right and proper. And should they at any time let the same to the lowest bidder, that they be authorized to require and receive the same bond that commissioners now do."

It is conceded that these statutes contain all the authority the inferior court of Floyd County had to make the contract in question. Exclusive rights to public franchises are not favored. If granted, they will be protected, but they will never be presumed. Every statute which takes away from a legislature its power will always be construed most strongly in favor of the State. These are elementary principles. The question here is whether the legislature of Georgia conferred on the inferior courts of its several counties the power of contracting away the right of the State to establish such ferries and bridges in a particular locality as the ever-changing wants of the public should in the progress of time require. In our opinion it did not. It gave these courts the right to *establish* ferries or bridges, but not to tie the hands of the public in respect to its future necessities. The right to establish one bridge and fix its rate of toll does not imply a power to bind the State or its instrumentalities not to establish another in case of necessity. In fact, the act of 1805, which remained in full force until the contract with Miller was made, expressly retained power for the legislature to make such alterations of what might be done by the courts as should seem to be proper. The act of 1818 gave the courts general power over all matters relative to ferries, and authorized them to hear and determine all matters which should come before them in relation to roads and bridges ; but there was no express repeal of the proviso of the act of 1805, and there is no such inconsistency between the two acts as to amount to a repeal by implication. Such being the case, the original power retained by the legislature over the acts of the courts in this particular remained in full force. The act of 1845 related only to the building and repairing of such public bridges as were not owned by private individuals or corporations. It conferred no new powers in respect to the bargaining away of public franchises. We see nothing in the case of *Shorter* v. *Smith* (9 Ga. 517) to the contrary of this. All the court there decided was that an exclusive right had not been granted. The question of power in the inferior courts to make such a grant was not involved, and certainly not decided. The language of the court in the opinion is to be construed with reference to the question actually under consideration, and should not be

extended beyond for any purpose of authority in another and different case.

Upon the whole, it seems to us that the Supreme Court of the State was right in its decision, and the judgment is therefore

*Affirmed.*