MERCANTILE TRUST & DEPOSIT CO. OF BALTIMORE v. COLLINS
PARK & B. R. CO. et al.

(Circuit Court, N. D. Georgia. February 7, 1900.)

No. 1,090.

1. CONSTITUTIONAL LAW—STATE LAW IMPAIRING OBLIGATION OF CONTRACTS—
   CITY ORDINANCE.
   Under the provision of the constitution of Georgia (article 3, § 7, par. 20)
   prohibiting the legislature from authorizing the construction of a street
   railroad in a city or town without the consent of the corporate authorities,
   the action of such authorities upon an application for a street-railroad
   franchise is the action of the state; and an ordinance granting such a
   franchise is passed under authority delegated by the state, and is a law
   of the state, within the meaning of the contract clause of the constitution
   of the United States.

2. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.
   A suit to enjoin the enforcement of a city ordinance which has the
   force of a state law, within the meaning of the contract clause of the
   constitution, on the ground that it impairs the obligation of a prior contract
   made by the city, involves a federal question, which gives a federal court
   jurisdiction, without regard to the citizenship of the parties.[1]

This is a suit in equity to enjoin the enforcement of an ordinance
of the city of Atlanta. On demurrers to bill.

King & Anderson, Goodwin & Hallman, and Payne & Tye, for
complainant.

King & Spalding, Brandon & Arkwright, Rosser & Carter, and
John L. Hopkins & Sons, for defendant Collins Park & B. R. Co.

James A. Anderson, City Atty., for defendant city of Atlanta.

NEWMAN, District Judge. The demurrers to the bill in this
case raise the question of the jurisdiction of the court. The bill was
filed by the Mercantile Trust & Deposit Company of Baltimore, a
corporation of the state of Maryland, against the Collins Park & Belt
Railroad Company, a corporation of the state of Georgia, exercising
its corporate powers in the county of Fulton, and against the city

[1] As to jurisdiction of cases involving federal questions, see note to Bailey
v. Mosher, 11 C. C. A. 308, and, supplementary thereto, note to Montana Ore-
Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.

of Atlanta, a municipal corporation of said county of Fulton.  The purpose of the bill is to enjoin the enforcement of an ordinance which authorized the Collins Park & Belt Railroad Company to condemn for its use certain parts of the track of the Atlanta Railway & Power Company, a corporation also of Georgia, and of the county of Fulton.  The complainant is trustee for a large amount of bonds issued by the Atlanta Railway & Power Company, and the holder of all of its stock, except 25 shares.

The first question is as to whether or not the railway and power company is an indispensable party to the litigation.  It is contended that there is a distinction between this case and the case of Old Colony Trust Co. v. Atlanta Ry. Co. (decided in this court in 1899) 100 Fed. 798, in which it was held that the Atlanta Consolidated Street-Railway Company was an indispensable party, and, as the facts of the case placed it on the side of the complainant in the litigation, that that defeated the jurisdiction of the court on the ground of citizenship, because in this case substantially all the stock of the railway and power company is in the hands of the nonresident trust company.  I am not satisfied that this would be sufficient to make a distinction between the two cases, and would be indisposed to retain jurisdiction on this ground, but it is unnecessary to discuss it further, if a federal question exists in the case, as claimed by the complainant; and the greater part of the argument has been directed to this latter question.

The bill alleges that the action complained of is a violation of the provision of the constitution of the United States which prohibits any state from passing a law impairing the obligation of contracts.  In order to determine this question, it is necessary to decide whether the ordinance of the city of Atlanta authorizing the Collins Park Company to condemn certain portions of the track of the railway and power company is a law of the state, in the meaning of the provision of the constitution of the United States.  It is not denied that ordinances of a city, acting in its legislative and governmental capacity, and proceeding as an instrumentality of the state, may be, and often have been, held to be laws of the state, in this connection; but it is claimed that under the facts here it is not true of the ordinance passed by the governing body of the city of Atlanta.

The city in 1891 granted to certain persons, as the representatives of several street-railroad lines in the city, then having a separate corporate existence, the right to consolidate the same and to electrically equip them.  It is unnecessary at present to go into any extended discussion of these ordinances, for the purpose of reaching the precise question at issue.  It is sufficient to say that in the report of a committee, which was subsequently adopted, the city, in granting the rights mentioned, reserved the right to allow any other street-railroad company to condemn as much as five blocks of the several lines which subsequently became the Consolidated Street Railway, whenever it should be necessary for the purpose of allowing other street-railroad companies to reach the center of the city. The grant now to the Collins Park Company is a right to condemn

more than five blocks of the railway and power company, which has become the successor of the Consolidated. One question, among others, which will be at issue when the merits of the case are reached, is whether the city reserved the right to condemn five blocks in all of the Consolidated tracks, or whether it reserved the right to condemn five blocks of each of the lines, the consolidation of which was authorized by the city at the same time that the reservation was made. The complainant contends, and will contend on the hearing of the case, for the former construction, and the defendants for the latter.

The constitution of the state of Georgia (article 3, § 7, par. 20) provides that "the general assembly shall not authorize the construction of any street passenger-railway within the limits of any incorporated town or city, without the consent of the corporate authorities." The same provision is contained in the general street-railway law of the state subsequently enacted. Consequently no street-railroad company can lay a track in any of the streets of a city in Georgia without the consent of the city authorities. In conformity with this provision of the constitution and laws, the city's consent was asked and given in 1891 to the Consolidated Company, with the reservation stated. Consent being asked in 1899 by the Collins Park Company for the use of the streets, the city's consent was given to the use of a number of streets, as well as its permission to condemn a portion of the track of the railway and power company by the same ordinance. Of course, the primary authority over all the highways of the state, as well as the streets of the cities and towns, is in the state, and this authority over the same would usually be exercised by the legislature. The constitution of Georgia wisely provides, however, that even the legislature shall not authorize a passenger street-railway company to occupy any of the streets of a city or town until it has the consent of the authorities controlling the affairs of the city or town in which such right may be desired. Is it not true, then, that this act of consent—of withholding or granting the use of the streets of the city for such purposes, and, indeed, the entire subject-matter of control of the streets in this way—is the act of the state, through the city authorities as its instrumentality? Does not the provision of the constitution requiring such consent before the legislative grant becomes effective make the action of the city in this respect a part of the legislative act? The legislature grants the use of the streets, subject to the city's consent, and is not the city's consent, therefore, a part of the grant? Let us examine some of the authorities on the subject, with a view to the determination of this question. It will be unnecessary to go very far back in examining the decisions of the courts for the purpose of elucidating this question. The recent decisions have been so full and ample on the subject that a few citations will show the conclusion that must inevitably be reached.

The first case on the subject to which attention need be called is the case of Wright v. Nagle, 101 U. S. 791, 25 L. Ed. 921. This case went to the supreme court from the state of Georgia, and one of the questions in the case was whether the action of the inferior court of Georgia in granting a franchise, acting under legislative

authority, was the action of the state. This was decided in the affirmative. On this subject the court says:

"We think, also, that the motion to dismiss must be overruled. It is true, the court below disposed of the case by deciding that the state statutes did not authorize the inferior court to grant Miller an exclusive right to maintain bridges within the designated limits, and that in so doing it gave a construction to a state statute. It is also true that ordinarily such a construction would be conclusive on us. One exception, however, exists to this rule, and that is when the state court 'has been called upon to interpret the contracts of states, though they have been made in the forms of law, or conformity with state legislation.' Bank v. Skelly, 1 Black, 436, 17 L. Ed. 173. It has been decided in Georgia that the right to receive tolls for the transportation of travelers and others across a river on a public highway is a franchise which belongs to the people collectively. Young v. Harrison, 6 Ga. 130. A grant of this franchise from the public in some form is therefore necessary to enable an individual to establish and maintain a toll bridge for public travel. The legislature of the state alone has authority to make such a grant. It may exercise this authority by direct legislation, or through agencies duly established, having power for that purpose. The grant, when made, binds the public, and is, directly or indirectly, the act of the state. The easement is a legislative grant, whether made directly by the legislature itself, or by any one of its properly constituted instrumentalities. Justices of Inferior Court v. Plank Road, 14 Ga. 486. The complainants claim they have such a grant through the agency of the inferior court, acting under the authority of the legislature. This is denied, because, as is insisted, the legislature has not given the court power to make an exclusive grant. That was the precise question decided below, and, under the exception to the rule just stated, is reviewable here."

The next case to which attention is called is a case which is very much relied on here by the defendants. Hamilton Gaslight & Coke Co. v. Hamilton City, 146 U. S. 258, 13 Sup. Ct. 90, 36 L. Ed. 963. It is contended that, tested by this decision, the action of the city in this case is not a state law, in the meaning of the constitution of the United States. The language of the court on this subject is as follows:

"The plaintiff's first contention is that there is no statute of Ohio authorizing any city, in which there are already gas works in full and complete operation, to erect gas works, or to levy a tax for that purpose. If this were conceded, we should feel obliged—the plaintiff and defendant both being corporations of Ohio—to reverse the judgment and remand the cause, with directions to dismiss the suit for want of jurisdiction in the circuit court. The jurisdiction of that court can be sustained only upon the theory that the suit is one arising under the constitution of the United States. But the suit would not be of that character, if regarded as one in which the plaintiff merely sought protection against the violation of the alleged contract by an ordinance to which the state has not, in any form, given or attempted to give the force of law. A municipal ordinance, not passed under supposed legislative authority, cannot be regarded as a law of the state, within the meaning of the constitutional prohibition against state laws impairing the obligations of contracts. Murray v. Charleston, 96 U. S. 432, 440, 24 L. Ed. 760; Williams v. Bruffy, 96 U. S. 176, 183, 24 L. Ed. 716; Water Co. v. Easton, 121 U. S. 388, 392, 7 Sup. Ct. 916, 30 L. Ed. 1059; New Orleans Waterworks Co. v. Louisiana Sugar-Refining Co., 125 U. S. 18, 31, 38, 8 Sup. Ct. 741, 31 L. Ed. 607. A suit to prevent the enforcement of such an ordinance would not, therefore, be one arising under the constitution of the United States. We sustain the jurisdiction of the circuit court because it appears that the defendant grounded its right to enact the ordinance in question, and to maintain and erect gas works of its own, upon that section of the Municipal Code of Ohio adopted in 1869 (now section 2486 of the Revised Statutes) providing that the city council of any city or village should have power, whenever it was deemed expedient and for the pub-

lic good, to erect gas works at the expense of the corporation, or to purchase gas works already erected therein, which section, the plaintiff contends, if construed as conferring the authority claimed, impaired the obligation of its contract previously made with the state and the city."

It is difficult to see how counsel find a different rule in this case from that announced in the former cases and in subsequent cases decided by the supreme court.

The next case to which attention is called is the case of City Ry. Co. v. Citizens' St. R. Co., 166 U. S. 557, 17 Sup. Ct. 653, 41 L. Ed. 1114. The following quotation from the opinion of the court in that case will show sufficiently for present purposes what was decided:

"(1) There can be no doubt that the circuit court had jurisdiction of the case, notwithstanding the fact that both parties are corporations and citizens of the state of Indiana. It should be borne in mind in this connection that jurisdiction depended upon the allegations of the bill, and not upon the facts as they substantially turned out to be. The gravamen of the bill is that under the act of the general assembly of 1861, and the ordinances of January 18, 1864, and April 7, 1880, the Citizens' Railroad Company had become vested with certain exclusive rights to operate a street railway in the city of Indianapolis, either in perpetuity or for the term of thirty years or thirty-seven years, which the city had attempted to impair by entering into a contract with the City Railway Company to pay and operate a railway upon the same streets. All that is necessary to establish the jurisdiction of the court is to show that the complainant had, or claimed in good faith to have, a contract with the city, which the latter had attempted to impair. Conceding that the legislature of the state alone had the right to make such grant, 'it may,' as was observed in Wright v. Nagle, 101 U. S. 791, 794, 25 L. Ed. 921, 'exercise its authority by direct legislation, or through agencies duly established, having power for that purpose. The grant, when made, binds the public, and is directly or indirectly the act of the state. The easement is a legislative grant, whether made directly by the legislature itself, or by any one of its properly constituted instrumentalities.' See, also, Saginaw Gaslight Co. v. Saginaw City (C. C.) 28 Fed. 529; Weston v. Charleston, 2 Pet. 462, 7 L. Ed. 481; Waterworks Co. v. Rivers, 115 U. S. 674, 6 Sup. Ct. 273, 29 L. Ed. 525. That the complainant had a contract with the city is entirely clear. It was so held by the supreme court of Indiana in Western Pav. & S. Co. v. Citizens' St. R. Co., 128 Ind. 525, 26 N. E. 188, 28 N. E. 88, and 10 L. R. A. 770, in which the liability of the company for certain street improvements was discussed and passed upon. It is true that by section 11 of the original act of 1861 a right was reserved to the general assembly to amend or repeal at their discretion the act authorizing the incorporation of street-railway companies; but that was a right reserved to the general assembly itself, and was never delegated, if in fact it could be delegated, to the common council of the city. That the city did attempt to impair this contract by the agreement of April 24, 1893, with the City Railway Company, and its ordinance ratifying the same, is equally clear. This contract was entered into in pursuance of a supposed right given by the act of the general assembly of March 6, 1891, known as the 'City Charter,' the fifty-ninth section of which enacted that 'the board of public works shall have power * * * to authorize and empower by contract telephone, telegraph, electric light, gas, water, steam or street car or railroad companies to use any street, alley or other public place in such city: * * * provided, that such contracts shall, in all cases, be submitted by said board to the council of such city, and approved by them by ordinance before the same shall take effect.' This contract and ordinance of April 24, 1893, even if otherwise valid, could not be construed to interfere with the rights of the complainant to occupy the streets of the city under the act of 1861 and the ordinance of January 18, 1864, without coming in conflict with that provision of the constitution which forbids states from enacting laws impairing the obligation of contracts. Whether the state had or had not impaired the obligation of this contract was not a question which could be properly passed

upon, on a motion to dismiss, so long as the complainant claimed in its bill that it had that effect, and such claim was apparently made in good faith, and was not a frivolous one. New Orleans v. New Orleans Waterworks Co., 142 U. S. 79, 88, 12 Sup. Ct. 142, 35 L. Ed. 943."

In the same volume (page 673, 166 U. S., page 696, 17 Sup. Ct., and page 1160, 41 L. Ed.) is the case of City of Baltimore v. Baltimore Trust & Guarantee Co. This case is important only because the court seems to accept the decision of the court below (Baltimore Trust & Guarantee Co. v. Mayor, etc. [C. C.] 64 Fed. 153) on the subject of jurisdiction, without question. The supreme court decided the merits of the matter, and in order to do this it was necessary to agree with the court below on the question of jurisdiction. There was a contention between the city and a street-railroad company as to the power of the city to withdraw a right which it had granted to lay double tracks on a certain street, and to restrict the company to laying only one track, after the company had commenced and partly executed the work of laying double tracks. Both parties were citizens of Maryland, and unless a federal question had been involved there was no jurisdiction in the court to hear the case. On this subject Circuit Judge Goff, deciding the case in the circuit court, says:

"I find from the decisions involving the questions I have been considering that where rights and privileges have been lawfully granted to and accepted by either a private or public corporation, and valuable improvements have been made on the faith of such grant, a contract has been thereby entered into, the impairment of which by a law of the state making such grant, passed by the legislature thereof or by a municipality authorized by it, or acting under the authority of a statute supposed to give the power (the right so to do not having been reserved), is forbidden by section 10 of article 1 of the constitution of the United States. Trustees v. Woodward, 4 Wheat. 518, 4 L. Ed. 629; Chicago v. Sheldon, 9 Wall. 50, 19 L. Ed. 594; Shields v. Ohio, 95 U. S. 319, 24 L. Ed. 357; New Jersey v. Yard, Id. 104, 24 L. Ed. 352; Railroad Co. v. Richmond, 96 U. S. 521, 24 L. Ed. 734; Wright v. Nagle, 101 U. S. 791, 25 L. Ed. 921; Greenwood v. Freight Co., 105 U. S. 13, 26 L. Ed. 961; Railroad Co. v. Delamore, 114 U. S. 501, 5 Sup. Ct. 1009, 29 L. Ed. 244; New Orleans Gaslight Co. v. Louisiana Light & Heat Producing & Mfg. Co., 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; Waterworks Co. v. Rivers, 115 U. S. 674, 6 Sup. Ct. 273, 29 L. Ed. 525; Sioux City St. Ry. Co. v. Sioux City, 138 U. S. 98, 11 Sup. Ct. 226, 34 L. Ed. 898; St. Louis v. W. U. Tel. Co., 148 U. S. 92, 13 Sup. Ct. 485, 37 L. Ed. 380; Saginaw Gaslight Co. v. City of Saginaw (C. C.) 28 Fed. 529; Coast-Line R. Co. v. Mayor, etc. (C. C.) 30 Fed. 646; Citizens' St. R. Co. v. City of Memphis (C. C.) 53 Fed. 715; State v. Corrigan Consol. St. Ry. Co., 85 Mo. 263; City of Burlington v. Burlington St. Ry. Co., 49 Iowa, 144."

There was a dissenting opinion by District Judge Morris, but the dissent is not as to jurisdiction, but on the merits of the case.

The next case is a waterworks case, from Texas. Insurance Co. v. City of Austin, 168 U. S. 685, 18 Sup. Ct. 223, 42 L. Ed. 626. The case is not particularly important here, except for an expression by Mr. Justice White in the opinion as to the recognition of municipal ordinances as state laws, which is as follows:

"Not only were the averments of the bill as to the invalidity of the state law adequate, but so, also, were the allegations as to the nullity of the city ordinances. These ordinances were but the exercise by the city of a legislative power which it assumed had been delegated to it by the state, and were

therefore, in legal intendment, the equivalent of laws enacted by the state itself,"—citing City Ry. Co. v. Citizens' St. R. Co., supra, and cases there cited.

The latest decision by the supreme court, which is important to a determination of this question, is the case of City of Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341. This was a waterworks case, also, and a case in which the city had granted certain rights to the water company, and subsequently proposed to erect waterworks of its own. A few extracts from the opinion will show the views of the court. The allegations of the bill in that case, upon which jurisdiction depended, are referred to in the opinion as follows:

"(1) The jurisdiction depends specifically upon the allegations in the bill that defendants insist that the contract of the city with the plaintiff was not a valid and binding contract, either in respect to the stipulation binding the city not to erect, maintain, or become interested in any system of waterworks other than those of the plaintiff, or in respect to the stipulation for furnishing water to the city by plaintiff, and that, regardless of plaintiff's rights, the city refuses to be bound by the contract, and is proposing to borrow money to erect and maintain waterworks of its own, and become a competitor with the plaintiff for the trade and custom of the customers of water; * * * and, in short, that the proposed action of the city is in fraud of plaintiff's rights under its contract with the city, and the protection guarantied to it under the constitution of the United States."

After stating that these allegations upon their face raise a question of the power of the city to impair the obligation of its contract with the plaintiff, the court proceeds to state the argument for the defendant, which is so much like the argument for the defendants in this case that it will be quoted, as follows:

"The argument of the defendant in this connection is that the action of the city in contracting with the water company, and in passing the ordinance of 1893 providing for the erection of waterworks, was not in the exercise of its sovereignty; that in these particulars the city was not acting as the agent of the state, but was merely exercising a power as agent of its citizens, and representing solely their proprietary interest; that the council in such cases, as trustee for the citizens, stands in the relation to them as directors to stockholders in a private corporation, acting solely as the agent of the citizens, and no wise as the agent of the state, and therefore that neither the state, nor the city as its agent, can be charged either with the making or the impairing of the original contract; that for these reasons the constitution of the United States has no application to the case, the federal court has no jurisdiction, and the bill, upon its admitted facts, presents only a violation by a citizen of the state of its contract with another citizen, and the plaintiff is bound to resort to the state courts for its remedy."

A further extract from the opinion of the court will be sufficient to show what was decided as to the contention just stated:

"It may be conceded as a general proposition that there is a substantial distinction between the acts of a municipality as the agent of the state for the preservation of peace and the protection of persons and property, and its acts as the agent of its citizens for the care and improvement of the public property and the adaptation of the city for the purposes of residence and business. Questions respecting this distinction have usually arisen in actions against the municipality for the negligence of its officers, in which its liability has been held to turn upon the question whether the duties of such officers were performed in the exercise of public functions or merely proprietary powers. It is now sought to carry the distinction a step further, and to hold that, if

a contract be made by a city in its proprietary capacity, the question whether such contract has been substantially affected by the subsequent action of the city does not present one of impairment by act of the state or its authorized agent, but one of an ordinary breach of contract by a private party, and hence the case does not arise under the constitution and laws of the United States, and the court has no jurisdiction, unless there be the requisite diversity of citizenship. How far this distinction can be carried to defeat the jurisdiction of the court, or the application of the contract clause, may admit of considerable doubt, if the contract be authorized by the charter; but it is sufficient for the purposes of this case to say that this court has too often decided, for the rule to be now questioned, that the grant of a right to supply gas or water to a municipality and its inhabitants through pipes and mains laid in the streets, upon condition of the performance of its service by the grantee, is the grant of a franchise vested in the state, in consideration of the performance of a public service, and, after performance by the grantee, is a contract protected by the constitution of the United States against state legislation to impair it. New Orleans Gaslight Co. v. Louisiana Light & Heat Producing & Mfg. Co., 115 U. S. 650, 660, 6 Sup. Ct. 252, 29 L. Ed. 516; Waterworks Co. v. Rivers, 115 U. S. 674, 6 Sup. Ct. 273, 29 L. Ed. 525; St. Tammany Waterworks Co. v. New Orleans Waterworks, 120 U. S. 64, 7 Sup. Ct. 405, 30 L. Ed. 563; Crescent City Gaslight Co. v. New Orleans Gaslight Co., 27 La. Ann. 138, 147. It is true that in these cases the franchise was granted directly by the state legislature, but it is equally clear that such franchises may be bestowed upon corporations by the municipal authorities, provided the right to do so is given by their charters. State legislatures may not only exercise their sovereignty directly, but may delegate such portions of it to inferior legislative bodies as, in their judgment, is desirable for local purposes. As was said by the supreme court of Ohio in State v. Cincinnati Gaslight & Coke Co., 18 Ohio St. 262, 293: 'And, assuming that such a power [granting franchises to establish gas works] may be exercised directly, we are not disposed to doubt that it may also be exercised indirectly, through the agency of a municipal corporation clearly invested, for police purposes, with the necessary authority.' This case is directly in line with those above cited. See, also, Wright v. Nagle, 101 U. S. 791, 25 L. Ed. 921; Hamilton Gaslight & Coke Co. v. Hamilton City, 146 U. S. 258, 266, 13 Sup. Ct. 90, 36 L. Ed. 963; Bacon v. Texas, 163 U. S. 207, 216, 16 Sup. Ct. 1023, 41 L. Ed. 132; New Orleans Waterworks Co. v. City of New Orleans, 164 U. S. 471, 17 Sup. Ct. 161, 41 L. Ed. 518."

Without referring to other decisions of the circuit courts and the circuit courts of appeal, reference will be made to the very recent decision of the circuit court of appeals for the Sixth circuit in the case of Iron Mountain R. Co. v. City of Memphis, 37 C. C. A. 410, 96 Fed. 113. It may be first remarked as to this case that it is cited with peculiar appropriateness immediately after the Walla Walla Case, because, in the opinion by Circuit Judge Taft, he first uses this expression:

"There are many cases in which the supreme court has declared a city ordinance to be a law within the contract clause of the constitution, which have much less of legislative character than public forfeitures of rights in the streets by municipal legislatures. Such a case is that of City of Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341."

And then, after quoting the extract which has been herein given from the opinion of Mr. Justice Brown in the Walla Walla Case, Judge Taft proceeds:

"Here the contract, the obligation of which was found to be impaired, concerned only the furnishing of water to the citizens of a municipal corporation, —a subject-matter certainly not regarded as more within the governmental functions of a city than the supervision and control of the streets, and the granting and resuming of public rights therein; and the law which was held

to impair the obligation of the contract was merely another ordinance providing for the construction of other waterworks by the city. Such municipal action as the building of waterworks has usually been regarded as proprietary, rather than governmental, and yet the ordinance directing it was held to be a law in violation of the federal constitution."

So much of the opinion as is exactly in point here is as follows:

"We come then to the question, did this resolution violate that part of section 10, art. 1, of the constitution of the United States declaring that 'no state shall * * * pass any * * * law impairing the obligation of contracts'? First. Was the resolution a law of the state, within the meaning of this clause? It has frequently been decided that where a municipal council passes an ordinance, in pursuance of authority vested in it by the state legislature, which is legislative in its character, and which is merely the exercise of delegated authority to make laws that the legislature might have made directly, such an ordinance is a law within the inhibition of the constitution, if it impairs the obligation of a contract. Murray v. Charleston, 96 U. S. 432, 24 L. Ed. 760; U. S. v. New Orleans, 98 U. S. 381, 392, 25 L. Ed. 225; Meriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197; Waterworks Co. v. Rivers, 115 U. S. 674, 6 Sup. Ct. 273, 29 L. Ed. 525; City of Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341. If such ordinance is administrative, rather than legislative, then it is not within the constitutional inhibition, even though it impairs the obligation of a contract. New Orleans Waterworks Co. v. Louisiana Sugar-Refining Co., 125 U. S. 18, 8 Sup. Ct. 741, 31 L. Ed. 607. The resolution in the case before us is admitted to have been passed with all the forms required, and by the vote necessary to enact an ordinance. It concerned the occupancy of the streets, which, as we have seen, the legislative council controls under delegated authority from the state legislature, as an agency of the state and a trustee for the public at large."

But a case has recently been decided in the circuit court for the Western division of this district, by Circuit Judge Pardee, which is itself sufficient authority for overruling the demurrer in this case. It is the case of Columbia, etc., Trust Co. v. City of Dawson.[1] In that case, after it had been argued and submitted, there being a difficulty about the parties, very much as in this case, the court allowed an amendment raising a federal question to be filed. So much of the amendment as is important here is as follows:

"Your orator shows that notwithstanding the validity of the aforesaid contract contained in the aforesaid ordinance of February 21, 1890, and notwithstanding the fact that the bonds were marketed on the faith of said contract, and the waterworks were erected at great expense, and the Waterworks Company complied with the terms and conditions of the contract, the said city of Dawson has by its ordinances and conduct attempted to impair the obligation of said contract, and has thereby greatly diminished and largely destroyed the value of the property of said Waterworks Company, which constitutes the security possessed by the bondholders, and has deprived bondholders of the rentals which were to be paid by said city under said contract, and said action and threatened action of said city are in fraud and destruction of the rights of bondholders and your orator, as their trustee, under said contract with the city, and the protection guarantied under the constitution of the United States. The aforesaid ordinance passed by said city council of Dawson on June 27, 1894, whereby said city undertook to repudiate said contract, was an attempt on the part of said city of Dawson to impair the obligation of said contract in violation of the constitution of the United States, and the protection thereby guarantied to private rights. The said city has also passed other ordinances and done acts in attempted impairment of said contract, namely, the ordinance passed by said city of Dawson on October 4, 1894, ordering an election for the purpose of determining whether two-thirds of the

---

[1] No opinion filed.

qualified voters of said city should by their assent authorize said city to issue $35,000 of 6% bonds for the purpose of buying or erecting a system of water-works and an electric light plant for said city, and the ordinance passed by said city of Dawson on November 5, 1894, on the same subject and to the like effect, and the holding of the election on December 12, 1894, pursuant to the provisions of said two last-mentioned ordinances, and the carrying of said proposition by the requisite two-thirds of the qualified voters of said city, and the ordinance passed by said city of Dawson on the 13th day of December, 1894, whereby the result of said election was declared to be in favor of the issue and sale of bonds for said purposes, as well as the subsequent conduct of the said city in giving effect to said ordinances by refusing to pay the water rent-als stipulated in said contract, or to levy a tax for the purpose as required by the contract, and by claiming that it was no longer bound by said contract. All of said ordinances and acts are an effort and attempt on the part of said city of Dawson to impair the obligations of said contract under color of a claim of authority from the constitution and laws of the state of Georgia, in violation and attempted impairment of the protection guarantied to said con-tract under the constitution of the United States."

It will be seen that no part of the action of the city of Dawson in the passage of ordinances and resolutions is claimed to be based on any specific legislative authority. The ordinances and resolutions were passed under the general power and authority of the city on the subject. Yet the court must have held this action of the city council of Dawson, or some part of it, to be a law of the state, because juris-diction was retained of the bill, and an injunction granted, pursuant to complainant's prayer. My understanding is that jurisdiction was retained solely because of the federal question raised in the manner stated. The case is very similar to the Walla Walla Case, and the action of the court was based very largely, I think, on that decision.

There is no escape from the conclusion that these authorities es-tablish the proposition that an ordinance passed by a municipal cor-poration in its legislative and governmental capacity, especially with reference to the control of the streets and the granting of rights and privileges therein, is a law of the state, within the meaning of the provision of the constitution of the United States in question.

It is earnestly contended, however, by the defendants that the question which will be at issue in this case, should the court proceed with it, is one of the construction of a contract, and that it is not, in effect, a law impairing its obligation. As I understand the argu-ment, it is that for a municipal ordinance to be a state law, as here contemplated, it should be an ordinance withdrawing a right, and not one merely construing the effect of a grant. I am wholly unable to see the force of this contention. If a municipality grants a right in the streets or otherwise, such as that, when accepted and acted upon, a binding contract comes into existence between the grantee and the municipality, and the city, by a limited construction of the effect of the grant, deprives the grantee of a part of the rights ob-tained thereby, this would seem to be as much an impairment of its obligation as if the city should by express action withdraw part of the rights so granted. In the Walla Walla Case it is said that the contention was that the facts made a case of "only a violation by a citizen of the state of its contract with another citizen, and the plaintiff is bound to resort to the state courts for its remedy," yet that contention was disposed of as has been already referred to. The

contention on this subject has been strongly presented by able counsel, but I am unable to agree with them in their views. I am wholly unable to see how the city can impair the binding force and full legal effect of a contract any more by construction than it could by direct withdrawal of rights granted. It is unnecessary to determine more than this at present. Several interesting features of the argument need not be noticed at this time. No opinion whatever is expressed, of course, upon the merits of the matter in controversy between the parties. The only question for determination at present is whether the ordinance passed by the city in 1899 is a law of the state, within the meaning of the constitutional provision as to the impairment of the obligation of contracts, and whether the bill charges a case of the making of a contract, and an effort to impair it, sufficient on its face to justify the court in entertaining jurisdiction of the suit. Believing that it does, the case will be retained. It will be necessary, however, in this view of the case, for the Atlanta Railway & Power Company to be made a party, and its interest will necessarily align it with the complainant. If this is done, the demurrer will be overruled; otherwise, the demurrer will be sustained for the want of necessary parties.