# The People on the relation of the Attorney General v. The Common Council of Detroit.

*Mandamus : Common council : Public works act.*   Mandamus is granted to compel the respondents to consider and act upon nominations made by the mayor for their approval under the act to establish a board of public works for the city of Detroit.

*Municipal self-government.*   The constitutional right of municipal self-government considered and sustained.

*Legislative authority : Presumptions : Municipal government.*   The legislature having an unquestionable right to prescribe the general features of local government in subordination to the constitutional purpose, and the boundary between the domain of state and that of local powers being indistinct, when legislation is assailed as an infringement upon the right of municipal self-government, not only will the presumption obtain that exists in every case, that the legislature purposed to keep within the limits of their authority, but more than the usual force will be allowed to the legislative judgment as to what is proper and admissible in the particular case.

*Municipal government : Common council.*   The common council of a city is a distinctive and inseparable feature in municipal government under our existing institutions, and cannot be done away with; nor can it be stripped of its legislative powers.

*Public works act : Legislative authority : Constitutional law : Common council.*   The act in question, in its general purpose, is held not open to the objection that it takes away from the common council its general legislative authority; and it is construed to confer no authority upon the board to make contracts for public improvements except subject to the approval of the common council.

*Administrative powers : Legislative powers.*   The fact that the act, in addition to the general duties imposed upon the board, which are of a purely administrative character, imposes others which may be called *quasi* legislative, is not important so long as the general legislative authority of the common council is not interfered with; some authority of a *quasi* legislative nature is essential to the efficient exercise of even purely administrative powers.

*Constitutional law : Legislative authority.*   A legislative act will not be held unconstitutional because it attempts too much and confers some powers that are inadmissible, provided in the main the powers conferred be lawful; except where such a law creates a system and the part which is legal cannot stand by itself without the aid of the rest, or is so much affected or disturbed by the rejection of the rest that it could not be supposed the legislature would have adopted it by itself, and then the whole will be rejected because the part cannot be regarded as the expression of the legislative will.

*Public works act construed.*   Whether or not there are any parts of the act in question which are unconstitutional, it is held its main features are valid, and its main purpose can be preserved and carried out without the exercise of any of the unusual powers at which objection is specifically directed.

*Heard January 29.    Decided January 30.*

Application for *mandamus.*

*D. C. Holbrook, City Counselor,* for the relator.

*F. A. Baker* and *Theodore Romeyn,* for the respondents.

COOLEY, J.

The relator in this case seeks to compel the performance by the respondents of the duty supposed to be imposed upon them to consider and act upon the nominations made by the mayor for their approval, under the act "to establish a board of public works in and for the city of Detroit," approved April 29, 1873. The respondents refuse to consider the nominations, and for cause assign the invalidity of the act because of its conflict with the constitution of the state.

It is not alleged that there is any defect of form in the act, or that there was any failure to observe the formalities which the constitution prescribes for the passage of laws. Neither is it claimed that any thing in the act is distinctly opposed to any specific provision of the constitution, except as in its results it may have the effect to nullify to a greater or less extent, within the territory where it is to operate, one of the leading and most manifest purposes which was had in view when the constitution was adopted. The specific objection to it is, that it takes from the people of Detroit, in a highly important degree, that right of municipal self-government which is their vested and inalienable right while our institutions remain what they now are.

The constitutional right of municipal self-government we have in several instances been called upon to declare and protect, and our views have been so fully expressed that it would be quite superfluous to repeat them here. Nevertheless we cannot avoid feeling serious embarrassment when questions of the nature of the present are raised for our decision, because of the manifest impossibility of indicating any distinct boundary to the powers which may lawfully be exercised by the legislature in matters of local

concern; an embarrassment much more serious than can possibly exist in most cases where a distinct and specific inhibition of the constitution is supposed to be disregarded. For, while nothing within that instrument is more conspicuous than the purpose to preserve our local institutions, only a few of their features are indicated, and at almost every point where state regulations are made to affect in any degree the local government, it is possible for serious question to arise whether such regulations do or do not invade or obstruct the system the constitution designed to perpetuate, and do or do not for that reason become inadmissible. And under such circumstances, with no unmistakable signs to guide us between the domain of state and local powers, it becomes us to exercise more than the usual caution not to refuse the sanction of judicial authority to legislation which is supposed to have exceeded a boundary so difficult to locate and define.

In *People v. Hurlbut, 24 Mich., 44,* we held it not competent for the state to appoint for the city of Detroit its municipal officers, in whom was to be vested the management, regulation and control of municipal property rights. In that case the invasion of the local right was clear and palpable, and the act attempted was wholly unknown in the history of our state, not warranted by the history of municipal institutions to which we succeeded, and only supported by a few doubtful and mischievous precedents in another part of the Union. In that case the court endeavored to show that if the particular act then complained of could be supported, the same reasons must support other action that would take from the citizens of Detroit all valuable participation in its government. In *People v. Common Council of Detroit, 28 Mich., 228,* an act was held void which seemed to the court to have invaded the local rights with equal distinctness. In that case the state had taken local officers chosen for certain administrative and advisory purposes, and vested them with such powers as made their office essentially a new one; and as their

authority was purely local, and related to the property rights of the city and its people, it seemed to the court only an indirect appointment by the state of officers whom the locality, if they were to have their interests committed to their care, had an unquestionable right to choose for themselves.

We should apply the principles of these cases without hesitation wherever we find them applicable, but we must. first be convinced that they are applicable, and shall be solicitous in any case to avoid reaching the conclusion that it has become necessary. For, with an unquestionable right in the legislature to prescribe the general features of local government in subordination to the constitutional purpose, there will not only be the presumption, which exists in every case, that the legislature has purposed to keep within the limits of its authority, but there will be the undoubted fact of a general legislative authority over the particular subject, whose boundaries are so indistinct that more than the usual force should be allowed to the legislative judgment as to, what is proper and admissible in the particular case.

In this instance the state has not attempted to exercise the power of appointing local officers, but in creating a new office has very properly left the filling of it to the mayor and common council. Neither has there been any attempt to remodel existing offices so as to vest the incumbents with authority which perhaps the people of the city might not consent to entrust them with. In no respect has the state taken to itself the local powers; and if the act is legally objectionable, it is not so because of the usurpation of local powers, but because the functions of local government are vested in a board of local officers who, though chosen in a mode wholly unexceptionable, cannot under the constitution be clothed with this authority. The complaint, therefore, is of the local division of powers, and not that the state has usurped them.

The precise objection, as we understand it, is that the act creating the board of public works takes from the com-

mon council, the proper legislative authority of the city, a large and highly important portion of its legislative powers, and confers them upon this board, thereby changing essentially the most important and most distinctive feature of local government, and removing the responsibility which before rested upon the immediate representatives of the people, who are chosen annually, to another board, in whose selection the people have only an indirect voice, and who are chosen for a term of years. In other words, as to many important concerns, the act substitutes for the legislature directly and frequently chosen, another body indirectly selected and with a more permanent tenure of power, and it does this in entire disregard, and to the overthrow of the system which prevailed when the constitution was adopted, and of which that instrument was the guaranty.

I shall assent to the position of the respondents, that the common council of a city,—I mean a body commonly known by that name, whether in any particular charter so designated or not,—is a distinctive and inseparable feature in municipal government under our existing institutions, and cannot be done away with. I shall also agree that to leave it in existence and strip it of its legislative powers is as palpable a violation of the constitution as would be its entire abolition. I cannot discover any safe ground in constitutional law on which the new idea of parceling out the powers of municipal governments among local boards, however chosen, can be supported under the provisions of constitutions adopted when such a system was unknown, and designed to guard and secure a system quite different. The controversy at this point would not relate to the principle, but to its application. In this case the common council is not abolished, and is not wholly stripped of power; and it may not be so clear as the respondents suppose, that there has been any plain and palpable invasion of their functions.

The general purpose of the act in question is to create a board of public works, in whom shall be vested the powers

formerly exercised by the board of sewer commissioners; also a general authority to prepare and require the adoption of a plan of laying out that part of the city not already platted; also the power over the cleaning of streets, and, subordinate to the common council, the power to contract for improving the streets. They are also to have a general supervision of all buildings and improvements ordered by the common council, the regulation of the lighting of streets, with various other powers of a like nature. Some portions of the act seem to be carelessly drawn, and it is not easy at all points to determine where this board is to be independent of the council, and where in subordination to it; but as I understand its provisions, in its most important duties, that is to say, in all that relates to contracting for public improvements, the board can make no contracts except subject to the approval of the common council.

Now it is not disputed that a considerable portion of the duties imposed by the act upon this board are purely administrative, and not in any proper sense legislative. Others may be said to be *quasi* legislative; but every administrative board exercises such powers, and must do so, if it is to have any efficient authority. It will not do to refine about what is and what is not legislative authority, or we might find every judge and every important officer in the state subject to criticism for exercising it; for judges make rules, which are a species of law, and state officers for some purposes make regulations and order contracts; we must distinguish between such acts and the general authority to make laws; and in like manner in the case of this city we must distinguish between the general legislative authority, which cannot be taken from the common council, and those *quasi* legislative powers which administrative officers may properly exercise in order to carry into effect the laws which the council have made for their execution.

29 MICH.—15.

It will not be disputed, I presume, that this board might have been vested with the powers formerly exercised by the sewer commissioners, and that the act if it had gone no further would have been unobjectionable, although those powers were in part at least *quasi* legislative. If so, it would have been equally competent to vest the same board with all other like powers. But conceding this to be the case, how can we say that this whole act is unconstitutional because some other authority which the act attempts to confer upon the board is unwarranted?

It is a familiar principle that a law is not to be held void because it attempts too much. A board is not an illegal board because with many admissible powers an attempt has been made to confer upon it some that are inadmissible. The lawful powers in such a case may be exercised, and the unlawful may be contested whenever an attempt is made to put them in force. I know of no exception to this rule but this: that where such a law creates a system, and the part which is legal cannot stand by itself without the aid of the rest, or is so much affected or disturbed by the rejection of the rest that it could not be supposed the legislature would have adopted it by itself, the whole shall be rejected, because the part cannot be regarded as the expression of the legislative will. And such an exception, it is insisted, is found in the case now before us.

I am not satisfied that there is any difficulty with the main features of this act. Much of the criticism to which it has been subjected by counsel seems to me unwarranted, and if at some points powers are intended to be given which are inadmissible, they seem to me to be exceptions which should be considered by themselves, and tested by themselves, but which cannot defeat the whole law. The main features of the act seem to me unobjectionable unless in point of policy; and with legislative policy we have no concern. Suppose it be true that the authority to this board to extend the city plat outside the city limits is void;

how can that affect its authority to make a plan within the city? Suppose the authority to forbid the use of private buildings for public assemblages to be excessive; how can that preclude its supervising, under the direction of the common council, the erection of a public hall?

I do not say in this case that I think any part of this act is unconstitutional, nor do I express the opinion that it is not. Some unusual powers for such a board are unquestionably given, but when we reach the conclusion, as I do, that the main purpose of this act can be preserved, it seems to me the present case is disposed of. It will be time enough to consider the doubtful powers when any attempt is made to exercise them, and perhaps when any conflict of authority shall arise as between the common council and this board, it will be found possible to give to this act such a construction as to make all its provisions harmonize, not only with each other, but also with the constitution. It will certainly be our duty to do this if possible. But at this time it seems to me to be the duty of the council to act upon these nominations.

A *mandamus* must issue as prayed.

GRAVES, CH. J., concurred.

CAMPBELL, J.

If I were satisfied that the intention of the legislature could be carried out by confining the board of public works to their legitimate place as agents, and not as rulers in the affairs which they may administer, I should not be disposed to question the legality of such an office.

I think, however, that the real purpose appearing in the act contemplates that the board shall have all the powers and prerogatives set forth, and not be hampered by any other authority except as there indicated, in any of the powers there specified. It is hardly questioned that the act can-

not be carried out fully, according to its terms, without taking from the city and giving to the board some powers which could not be justified. As my brethren are of opinion that the act can be sustained to the extent of what would be valid, and the remainder distinguished and annulled, it would be premature to attempt now to point out what provisions may and may not stand upon that principle; and I abstain from that discussion. I am not prepared to concur in granting the writ.

CHRISTIANCY, J., did not sit in this case.