SEALS v HENRY FORD HOSPITAL

BARBARA L TROYER v FIRST NATIONAL BANK & TRUST
COMPANY OF MICHIGAN

JERRY C TROYER v FIRST NATIONAL BANK & TRUST
COMPANY OF MICHIGAN

Docket Nos. 57454, 57609, 60359, 60360, 60510, 60511. Submitted
December 7, 1982, at Lansing.—Decided February 23, 1983.

Sandra Seals, a former employee of the Henry Ford Hospital,
brought suit in Wayne Circuit Court against Henry Ford Hospi-
tal, Douglas Peters, and John Frenn alleging that the defen-
dants unlawfully discriminated against her on the basis of her
sex and race in violation of the Elliott-Larsen Civil Rights Act
and the Michigan Constitution. The court, Joseph G. Rashid, J.,
granted partial summary judgment for the defendants holding
that the Civil Rights Act was unconstitutional.

Barbara L. Troyer filed a suit in Kalamazoo Circuit Court
against First National Bank and Trust Company of Michigan
and the Civil Rights Commission alleging that the First Na-
tional Bank discriminated against her in violation of the El-
liott-Larsen Civil Rights Act and that the Civil Rights Commis-
sion failed to adequately investigate her claim. Jerry C. Troyer
also filed a suit in Kalamazoo Circuit Court alleging that First
National Bank discriminated against him in retaliation for his
support of Barbara Troyer's claim of discrimination and that
the Civil Rights Commission failed to investigate his claim. The
court, John E. Fitzgerald, J., granted summary judgment for
the defendants in both cases holding that the Civil Rights Act
was unconstitutional.

In all of the cases the circuit judges held that the act violated
the single-object clause of the Michigan Constitution. The ar-
rest record and polygraph provisions of the act were found to

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes § 119 et seq.
[2] 16 Am Jur 2d, Constitutional Law § 260 et seq.
   73 Am Jur 2d, Statutes § 383.
[3] 16 Am Jur 2d, Constitutional Law § 212 et seq.
[4] 16A Am Jur 2d, Constitutional Law § 746 et seq.

be nongermane to the act's object. The trial judges held that provisions of a statute found to violate the single-object clause were not severable but that the entire statute was constitutionally invalid. The Troyers appealed, Seals appealed by leave granted, and the defendants cross-appealed. The Court of Appeals consolidated the cases on appeal to consider the constitutionality of the Elliott-Larsen Civil Rights Act. *Held:*

1. The trial judges erred in ruling that the Elliott-Larsen Civil Rights Act is constitutionally invalid. A violation of the single-object clause does not always require the invalidation of the entire statute in which it appears. The polygraph provisions of the act were added as amendments and are severable. The application of a per se rule against severability will not promote the purpose of the single-object clause when applied to amendments. The arrest record provisions of the act are not severable. They were in the act when it was passed and were germane to the act's object.

2. The trial judge in the *Seals* case erred in holding that the provision of the Civil Rights Act limiting the award of attorney fees to plaintiffs violated the defendants' rights to equal protection of the law. A party challenging a legislative classification must show that the legislative scheme is without reasonable justification. Here, the Legislature was justified in believing that allowing an award of attorney fees to defendants in civil rights actions would discourage the bringing of such actions. The Court of Appeals declined to address the defendants' claims on cross-appeal in the *Seals* case regarding state action and equal protection because the claims may be moot in light of the Court's holding that the Elliott-Larsen Civil Rights Act is constitutional. The trial judge did not err in holding that only Seals's claim for intentional infliction of emotional distress was barred by the exclusive remedy provisions of the Worker's Disability Compensation Act. The summary judgment for defendants in the *Seals* case is reversed.

3. In both *Troyer* cases the summary judgments for defendants are reversed.

Reversed and remanded.

1. CONSTITUTIONAL LAW — SINGLE OBJECT.

The constitutional prohibition against a statute embracing more than one object does not always require the invalidation of the whole statute in which a violation of the prohibition appears (Const 1963, art 4, § 24).

2. CONSTITUTIONAL LAW — STATUTES.

> The proper test for severability is that an entire statute should not be declared void where a part of the statue is unconstitutional unless all of the provisions are connected in subject matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed that the Legislature would have passed one without the other.

3. CIVIL RIGHTS — CONSTITUTIONAL LAW.

> The Elliott-Larsen Civil Rights Act is not constitutionally invalid (MCL 37.2101 *et seq.;* MSA 3.548[101] *et seq.).*

4. CONSTITUTIONAL LAW — LEGISLATIVE CLASSIFICATIONS.

> A party challenging a legislative classification on the basis that the classification denies him equal protection of the law must show that the legislative scheme is without reasonable justification and where the legislative judgment is supported by any state of facts known to, or which could reasonably be assumed by the Legislature, the legislative judgment should be upheld, even if the facts are debatable.

*Wickett, Laudenslager & Baugh, P.C.* (by *Robert W. Smith* and *Mary E. Delehanty),* for the Troyers.

*Susan Winshall & Associates, P.C.* (by *Susan Winshall),* for Seals.

*Howard & Howard* (by *Lawrence J. Murphy),* for First National Bank.

*Keller, Thoma, Schwarze, Schwarze, DuBay & Katz, P.C.* (by *Terrence J. Miglio, Thomas H. Schwarze* and *Gary P. King),* for Henry Ford Hospital, Peters, and Frenn.

Amici Curiae:

American Civil Liberties Union Fund of Michigan

The Coalition of Black Trade Unionists (Detroit Chapter)

The Detroit Association of Black Organizations

Michigan Trial Lawyers Association

The Wolverine Bar Association

The National Association for the Advancement of Colored People (Detroit Chapter)

The National Lawyers Guild (Detroit Chapter)

Organization for the Advancement of Minority Employment

The Women Lawyers Association of Michigan (by *Ronald J. Reosti).*

Before: Bronson, P.J., and T. M. Burns and Allen, JJ.

Bronson, P.J. The issue common to these appeals is the trial judge's holding that the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* is unconstitutional.

In each case, the trial judge held that the act violated the single-object clause of Const 1963, art 4, § 24. The arrest record and polygraph provisions of the act were found to be nongermane to its object. In each case, the trial judge held that provisions of a statute found to violate the single-object clause are not severable.

None of these cases involves the arrest record or polygraph provisions of the act. All of the parties concede, therefore, that we must first address appellants' contention that these provisions are severable. In holding that they are not, the trial judge

in each case relied exclusively on the majority opinion in *Advisory Opinion on Constitutionality of 1975 PA 227,* 396 Mich 123, 130-132; 240 NW2d 193 (1975), in which the Court stated:

"Severability is not available in instances challenging constitutionality on this ground. A prohibition against the passage of an act relating to different objects expressed in the title makes the whole act void."

The Court explained:

" 'It is impossible to tell which object was intended by the Legislature, and in such case both fall under the same condemnation.' *Skinner v Wilhelm,* 63 Mich 568, 572; 30 NW 311 (1886).

"An early reference to the concept behind the constitutional prohibition is found in colorful language in *People v Collins,* 3 Mich 343, 384 (1854), a case in which the Court was evenly divided on the constitutionality of an act prohibiting the manufacture of intoxicating beverages and the traffic therein. The decision discussed other challenges, but in his opinion and indicative of judicial awareness of the problem, Justice PRATT said:

" 'This express and positive provision was incorporated into the constitution with the avowed intention on the part of the framers, of arresting, as far as possible, corruption and log rolling in legislation—you help me and I will help you—I will support your bill and help you pass it, if you will permit me to insert a section on a certain matter, etc.; a system of legislation that has often been carried so far as to become disgraceful to representatives and deeply injurious to the public.' *People v Collins, supra.*

"Justice COOLEY in *People ex rel Drake v Mahaney,* 13 Mich 481 (1865), says with respect to the same provision of the Constitution of 1850:

" 'The history and purpose of this constitutional provision are too well understood to require any elucidation at our hands. The practice of bringing together into one bill subjects diverse in their nature, and hav-

ing no necessary connection, with a view to combine in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits, was one both corruptive of the legislator and dangerous to the state.' *Mahaney, supra,* 494-495.

\* \* \*

"This Court cannot engage in idle speculation as to whether, for instance, the provision relating to ethical conduct and conflict of interest contracts would on their own merits have been adopted by the Legislature, nor those relating to campaign contributions and expenditures, nor those establishing the state campaign fund for gubernatorial elections, nor those regulating lobbyists."

We cannot agree with the holdings of the courts below that a violation of the single-object clause always requires the invalidation of the statute in which it appears. Although some of the language used by the Supreme Court above is absolute, the reasoning used by the Court in the entire passage undermines an absolute rule. It would be unwise to impose a per se rule against severability on the basis of dicta, when such a rule is not supported by the well-known and long-accepted purposes underlying the constitutional provision.

This case shows why a slavish adherence to dicta in a Supreme Court opinion is often a poor substitute for legal analysis based on the reasoning of the same opinion. The analysis in *Advisory Opinion, supra,* does not include any reasons why a per se rule against severability should be adopted. Instead, it tests the act in question against the traditional standards for severability. In *People v McMurchy,* 249 Mich 147, 159; 228 NW 723 (1930), the Court quoted 1 Cooley on Constitutional Limitations (8th ed), pp 362-363:

" 'If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them.' "

The test for severability used by the Court in *Advisory Opinion, supra,* is stated in the same passage from Cooley; whether it can be presumed that the Legislature "would have passed the one [provision] without the other". *McMurchy, supra,* p 158. See also *People ex rel Attorney General v Detroit Common Council,* 29 Mich 108, 114 (1874).

We find that the application of a per se rule against severability will not promote the purpose of the single-object clause when applied to amendments. Defendants here have asked us to hold that the Legislature's (at worst) inadvertence has resulted in the invalidation of a major piece of legislation. This case at least should raise the specter that minor nongermane amendments might be used to achieve the implicit repeal of other major statutory schemes. Such a perverse result could only be achieved with the help of a judiciary which ignores the presumptive validity of legislative enactments; we refuse to play this role here.

The Elliott-Larsen Civil Rights Act was adopted in 1976 (1976 PA 453). The polygraph provisions

were added by separate amendments in 1978 (1978 PA 610) and 1979 (1979 PA 91). Nothing else was contained in either amendatory act. From an examination of the statute alone, without reference to any extrinsic aids, we can determine that the 1976 act was passed without consideration of the amendments to be made in the future. To do so, we need not engage in the "idle speculation" condemned by the Supreme Court in *Advisory Opinion, supra.* Even a cursory examination of the original act, its amendments and their dates of enactment, leaves absolutely no room to doubt the Legislature's intent. We conclude that the polygraph provisions of the act are severable; we need not address the issue of their constitutional validity.

Appellants argue that the arrest record provisions of the act are also severable. We disagree. These provisions were in the act, as passed, in 1976. The act was amended by 1977 PA 162 to refer to these provisions in its title. Plaintiffs argue that the adoption of this amendment on its own merits indicates that it would have been enacted independent of the rest of the act. This argument, if accepted, would sustain only the arrest record provisions. The rest of the act was never passed without containing the arrest record provisions. We should not presume that the act would have passed in 1976 without those provisions. Since it is the validity of the remainder of the act which appellants wish to sustain, the severance argument cannot help them.

We have no reservations, however, about holding that the arrest record provisions of the act are germane to its object. Ignoring the Supreme Court's numerous other opinions on the subject, defendants contend that this Court is bound to use

what they call "the *Reed* test", referring to *Kent County ex rel Bd of Supervisors v Reed,* 243 Mich 120; 219 NW 656 (1928), in applying the single-object clause. Defendants would ask two questions: first, does the object of a provision have any "necessary connection" with the object of the remaining provisions of an act; second, could the provisions have been enacted in separate laws without referring to, or affecting, one another? Defendants' litmus-test analysis using a few phrases carefully excerpted from a Supreme Court opinion is not at all persuasive for several reasons. The Court, in *Advisory Opinion, supra,* did nothing to suggest that it was promulgating a "test" for deciding a single-object claim. Numerous other "tests" appear in the same opinion, *e.g.,* does a provision add to an act "something foreign and incongruous"? (pp 132-133); is the act "exactly the type of legislation at which the framers of the Constitution directed their prohibition?" (p 130); are "distinct and unrelated objects" embraced in the same act? (p 129). While all of these "tests" may be useful, we must be guided primarily by the purpose of the constitutional provision: to prevent "logrolling", described by Justice COOLEY as:

"The practice of bringing together into one bill subjects diverse in their nature, and having no necessary connection, with a view to combine in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits * * *." *People ex rel Drake v Mahaney,* 13 Mich 481, 494 (1865).

We believe that the Legislature was correct in its determination that its goal of promoting the civil rights of disadvantaged persons could be advanced by prohibiting a prospective employer from

examining an applicant's record of arrests without convictions. The federal courts have repeatedly sustained claims that the use of arrest records by prospective employers has a disproportionate adverse impact on the employment opportunities of black men. See *Richardson v Hotel Corp of America,* 332 F Supp 519 (DC La, 1971), *aff'd* 468 F2d 951 (CA 5, 1972); *Gregory v Litton Systems, Inc,* 316 F Supp 401 (DC Cal, 1970), *modified on other grounds* 472 F2d 631 (CA 9, 1972); *Carter v Gallagher,* 337 F Supp 626 (DC Minn, 1971), *aff'd as modified* 452 F2d 315 (CA 8, 1971), *cert den* 406 US 950; 92 S Ct 2045; 32 L Ed 2d 338 (1972); *Green v Missouri Pacific R Co,* 523 F2d 1290 (CA 8, 1975); *Dozier v Chupka,* 395 F Supp 836 (DC Ohio, 1975), See, also, Note, *Title VII—Racial Discrimination in Employment—Employer's Use of Record of Arrests Not Leading to Conviction,* 17 Wayne L Rev 228 (1971); Note, *Discrimination on the Basis of Arrest Records,* 56 Cornell L Rev 470 (1971); Comment, *Arrest Records as Racially Discriminatory Employment Criterion,* 6 Harv Civil Rights L Rev 165 (1970); Note, *Arrest Records, Hiring Policies, and Racial Discrimination,* 57 Iowa L Rev 506 (1971); Comment, *Arrest Records and Employment Discrimination,* 32 Univ Pitts L Rev 254 (1971); Note, *Civil Rights—An Employment Policy of Disqualifying Frequently Arrested Applicants Unlawfully Discriminates Against Blacks Under Title VII of the Civil Rights Act of 1964,* 49 Tex L Rev 141 (1970); Comment, *Discriminatory Hiring Practices Due to Arrest Records— Private Remedies,* 17 Villanova L Rev 110 (1971).

Numerous cases before the United States Equal Employment Opportunity Commission involving claims of racial discrimination based on an employer's use of arrest records are discussed in

Anno: *Consideration of Arrest Record as Unlawful Employment Practice Violative of Title VII of Civil Rights Act of 1964 (42 USC §§ 2000e et seq.)*, 33 ALR Fed 248. Whether or not we are convinced that the subject of the use of arrest records by employers is best treated in a statute the purpose of which is the promoting of civil rights is irrelevant. It is the Legislature, not the courts, to whose discretion the proper placement of statutory provisions is committed. It is obvious that, in 1976, the Legislature had some reason to believe that the arrest record provisions were germane to the general object of the act.

We also find that the arrest record provisions, to be enforced by the state civil rights commission, would have required a reference to the Elliott-Larsen Act if placed in a different statute. It makes sense to group the provisions concerning the powers and duties of the civil rights commission in one statute.

We conclude that the trial judges erred by ruling that the Elliott-Larsen Civil Rights Act is constitutionally invalid.

Several other issues in the *Seals* case are before this Court. Defendants sought a summary judgment on plaintiff's prayer for an award of attorney fees pursuant to the statute. The trial judge held that the statutory provision for fees in actions brought under the Elliott-Larsen Act, limiting their award to plaintiffs, violated the rights of defendants to equal protection of the laws. MCL 37.2802; MSA 3.548(802) states:

"A court, in rendering a judgment in an action brought pursuant to this article, may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the complainant in

the action if the court determines that the award is appropriate."

See, also, MCL 37.2801(3); MSA 3.548(801)(3). The trial judge held that he was bound by the Supreme Court's decision in *Wilder v Chicago & West Michigan R Co,* 70 Mich 382; 38 NW 289 (1888). In *Wilder,* the Court struck down a statute allowing plaintiffs to recover a fee for prevailing in a suit for damage to animals, without allowing prevailing defendants to recover a similar fee. By relying on *Wilder,* the trial court erred. The proper test for analyzing defendants' equal protection claim was not used in *Wilder,* an opinion which was ill-reasoned by any standard.

The proper test is whether the statutory provision in question bears a reasonable relation to a permissible legislative objective. *Davey v Detroit Automobile Inter-Ins Exchange,* 414 Mich 1, 10-12; 322 NW2d 541 (1982). A party challenging a legislative classification must show that the legislative scheme is without reasonable justification. *Davey, supra,* p 11. Where the legislative judgment is supported by any state of facts known to, or which could reasonably be assumed by, the Legislature, the legislative judgment msut be upheld, even if the facts are debatable. *Davey, supra,* p 12. We find that the Legislature could plausibly have believed that allowing plaintiffs in civil rights actions to recover attorney fees would encourage persons deprived of civil rights to seek legal redress of their grievances. The Legislature was also justified in believing that allowing an award of fees to defendants in similar actions would discourage the bringing of actions under the Elliott-Larsen Act. The classification defendants complain of does not violate their right to equal protection of the laws.

We decline to address defendants' first two claims on cross-appeal. The questions of state action and the state equal protection clause may be moot in light of our determination that the Elliott-Larsen Act is constitutional. If these questions remain at issue between the parties, they should address their claims to the trial court, which can decide them in light of our holding that the act is constitutional.

Defendants also contend that the trial judge erred by denying their contention that part or all of plaintiff's claim is barred by the exclusive remedy provisions of the Worker's Disability Compensation Act, MCL 418.131; MSA 17.237(131). We note first that the trial judge's ruling was limited to Count IV of plaintiff's complaint, her claim for damages for intentional infliction of emotional distress. He ruled generally that plaintiff's complaint was not barred based on our opinion in *Kissinger v Mannor,* 92 Mich App 572; 285 NW2d 214 (1979). We affirm on the same basis.

In *Seals,* the summary judgment in defendants' favor is reversed. Remanded for further proceedings. Costs to plaintiff.

In both *Troyer* cases, the summary judgments in favor of defendants are reversed. Remanded for further proceedings. Costs to plaintiffs.