848 F.2d 193
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
George QUATRINE, Plaintiff-Appellant,
v.
SHELL OIL COMPANY, Defendant-Appellee.
 No. 87-1422.
 United States Court of Appeals, Sixth Circuit.
 May 31, 1988.
 
 Before KEITH, BOYCE F. MARTIN, Jr., and DAVID A. NELSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellant George Quatrine, appeals from the judgment of the district court dismissing his claim brought pursuant to Sec. 205a of the Elliott-Larsen Civil Rights Act, M.C.L. Sec. 37.2205a, M.S.A. Sec. 3.548 (205a), and his claim for intentional infliction of emotional distress against the defendant Shell Oil Company, for failure to state a claim upon which relief may be granted, Fed.R.Civ.P. 12(b)(6). For the following reasons, we affirm.
 
 I.
 
 2
 This action arose out of an incident which occurred on the night of January 11-12, 1980. Quatrine, who was employed by Shell as a tanker truck driver, was scheduled to deliver a load of gasoline from Shell's River Rouge distribution plant to a location in Detroit. After making that delivery, Quatrine was arrested by the Clinton Township Police Department and accused of larceny under $100.00, in that he had allegedly stolen gasoline from the tanker truck. Shell was informed of the arrest, and, after making inquiries, fired Quatrine. The Union to which Quatrine belonged, the Oil, Chemical & Atomic Workers International Union, Local 7-389, declined to seek arbitration of his dismissal. Subsequently, Quatrine was acquitted in state court of the larceny charge.
 
 
 3
 During his trial, a lawyer was sent by Shell to monitor the proceedings. Following Quatrine's acquittal, Shell supervisory personnel allegedly told other tanker truck drivers that Quatrine was acquitted due to having a "Mafia" lawyer who was "in cahoots" with the Clinton Township City Attorney. When Quatrine applied for unemployment compensation, Shell unsuccessfully contested the application. Finally, Shell produced a movie concerning employee theft for exhibition to Shell drivers which allegedly depicted Quatrine engaging in two criminal acts.
 
 
 4
 Quatrine filed two actions in state court. The first alleged that Shell had violated Sec. 205a(1) the Elliott-Larsen Civil Rights Act, M.C.L.A. Sec. 37.2101 et. seq., by maintaining a record of his arrest in connection with his dismissal. In his second action, Quatrine reasserted his Elliott-Larsen claim against Shell, and added claims for defamation, wrongful termination, and intentional infliction of emotional distress. Also, Quatrine alleged that the Union had breached its duty of fair representation. Quatrine subsequently dismissed the Union and his claim for wrongful discharge,[1] and Shell removed the cases to federal court based on diversity of citizenship, 28 U.S.C. Secs. 1332, 1441, where they were consolidated.
 
 
 5
 After Shell moved for summary judgment, the district court dismissed Quatrine's Elliott-Larsen claim for failure to state a claim upon which relief may be granted; dismissed Quatrine's defamation claim as time-barred, M.C.L.A. Sec. 600.5805(7); and declined to dismiss Quatrine's claim for intentional infliction of emotional distress, although it rejected every basis for such a claim save the production of the movie which allegedly portrayed Quatrine as a criminal. Thereafter, the parties stipulated that the movie, standing alone, was neither so extreme nor outrageous that it went beyond all public bounds of decency and tolerance. On April 2, the district court denied Quatrine's motion for rehearing. Quatrine now appeals the dismissals of his Elliott-Larsen claim and his claim for intentional infliction of emotional distress.
 
 II.
 
 6
 Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. Blake v. Mead Containers, 779 F.2d 1146, 1150 (6th Cir.1985); Fed.R.Civ.P. 56(c). In applying this standard, the district court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. Arnett v. Kennedy, 416 U.S. 134, 139-140 (1974); Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979).
 
 
 7
 A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. Davis H. Elliot Co., Inc. v. Caribbean Utilities Co., Ltd., 513 F.2d 1176, 1182 (6th Cir.1975). When evaluating a 12(b)(6) motion, the district court must regard the factual allegations in the complaint as true. Windsor v. The Tennessean, 719 F.2d 155, 158 (1983) cert. denied, 469 U.S. 826 (1984). The claim should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).
 
 III.
 
 8
 Section 205a(1) of the Elliott-Larsen Civil Rights Act provides that:
 
 
 9
 An employer, employment agency, or labor organization, other than a law enforcement agency of the state or a political subdivision of the state, shall not in connection with an application for employment, personnel, or membership, or in connection with the terms, conditions, or privileges or employment, personnel, or membership request, make, or maintain a record of information regarding an arrest, detention, or disposition of a violation of law in which a conviction did not result. A person shall not be held guilty of perjury or otherwise giving a false statement by failing to recite or acknowledge information the person has a civil right to withhold by this section. This section shall not apply to information relative to a felony charge before conviction or dismissal.
 
 
 10
 M.C.L.A. Sec. 37.2205a(1). The district court concluded that Shell's actions did not fall within the rubric of this section. We agree.
 
 
 11
 We are guided in this assessment, as was the district court, by the opinion of the Michigan Court of Appeals in Seals v. Henry Ford Hospital, 123 Mich.App. 329 (1983). Seals involved a challenge to the constitutionality of the Elliott-Larsen Civil Rights Act, based on an argument that the arrest records provisions, as well as a provision (former Sec. 205a (2-8)) prohibiting the use of polygraphs as a basis for hiring or firing, violated the single-object clause of the Michigan Constitution. Const. 1963, Art. 4, Sec. 24. In concluding that the arrest records provision was, in fact, germane to the object of the Elliott-Larsen Civil Rights Act, the Court of Appeals reasoned:
 
 
 12
 We believe that the Legislature was correct in its determination that its goal of promoting the civil rights of disadvantaged persons could be advanced by prohibiting a prospective employer from examining an applicant's record of arrests without convictions. The federal courts have repeatedly sustained claims that the use of arrest records by prospective employers has a disproportionate adverse impact on the employment opportunities of black men.
 
 
 13
 123 Mich.App. at 337-38 (emphasis added) (citations omitted).
 
 
 14
 Here, Quatrine alleges no acts which would support a claim that a prospective employer used his arrest record against him. Nor does he allege that Shell requested, made or maintained a record of his arrest as a condition of his employment. Instead, Quatrine merely asserts that he was dismissed by Shell because of his record of arrest. We read nothing in Sec. 205(a)(1) that would require the conclusion, contrary to common sense, that the Michigan Legislative meant to prohibit an employer from obtaining an arrest record in connection with its investigation of a theft by a employee against that employer. Therefore, we conclude that the district court correctly dismissed Quatrine's Elliott-Larsen claim for failure to state a claim upon which relief could be granted.
 
 IV.
 
 15
 Quatrine also argues that the district court erred in dismissing his claim of intentional infliction of emotional distress. We do not agree.
 
 
 16
 The Michigan Court of Appeals has adopted the standards enunciated in the Restatement of Torts in its definition of one who commits the tort of intentional infliction of emotional distress:
 
 
 17
 (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
 
 
 18
 (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
 
 
 19
 (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
 
 
 20
 (b) to any other person who is present at the time, if such distress results in bodily harm.
 
 
 21
 1 Restatement Torts 2d, Sec. 46, pp. 71-72; Ledsinger v. Burmeister, 114 Mich.App. 12, 17-18 (1982).
 
 
 22
 With regard to the requirement that the defendant's conduct be "extreme and outrageous," Sec. 46, comment d, p. 73 of the Restatement states:
 
 
 23
 It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'
 
 
 24
 The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.
 
 
 25
 Ledsinger, 114 Mich.App. at 18.
 
 
 26
 Quatrine alleged four acts as bases for this claim:
 
 
 27
 (a) [Defendant Shell] sent a lawyer from Texas to observe the Plaintiff's criminal trial in Clinton Township and to assist the Township Attorney in Plaintiff's prosecution.
 
 
 28
 (b) After Plaintiff's acquittal in the criminal trial, Shell Oil Company supervisory personnel issued an oral statement to the other tanker truck drivers that Plaintiff was acquitted due to having a "Mafia" lawyer who was in cahoots with the Clinton Township City Attorney.
 
 
 29
 (c) Attempting unsuccessfully to prevent Plaintiff from receiving unemployment compensation.
 
 
 30
 (d) Produced a derogatory movie containing a segment depicting Plaintiff committing two criminal acts.
 
 
 31
 The district court found, and we agree, that (a) there was nothing "extreme" or "outrageous" about sending an attorney to witness the criminal trial. Moreover, the district court was correct in noting that (b) the comments allegedly made concerning Quatrine's acquittal were directed at his attorney, and not Quatrine. As for (c) the opposition to Quatrine's unemployment compensation claim, Shell certainly had a legal right to contest that claim. Finally, (d) the parties have stipulated that the movie, standing alone, is neither so extreme nor outrageous that it goes beyond all public bounds of decency and tolerance; hence, it cannot support a claim of intentional infliction of emotional distress.
 
 
 32
 The thrust of Quatrine's argument on appeal is that, taken as a whole, these alleged acts can support a claim for intentional infliction of emotional distress. Although we do not necessarily endorse this "sum of the parts" method of analysis, we agree with the district court that, even taken together, no "extreme" or "outrageous" conduct has been demonstrated.
 
 V.
 
 33
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 34
 DAVID A. NELSON, Circuit Judge, concurring.
 
 
 35
 Prior to an amendment that became effective on March 30, 1983, Sec. 205(a)(1) of the Elliott-Larsen Civil Rights Act provided, in pertinent part, that "an employer ... shall not ... in connection with the terms, conditions, or privileges of employment ... make, or maintain a record of information regarding an arrest ... in which a conviction did not result." (Emphasis supplied.)
 
 
 36
 Section 1 of P.A. 1982, No. 45, which became effective on March 30, 1983, substituted "or" for the underscored word "of," thereby making the meaning of the preceding four words ("terms, conditions, or privileges") exceedingly murky. Because the present case must be decided under the version of Sec. 205(a) that was in effect prior to March 30, 1983, however, I think it is arguable that Shell Oil Co. violated the statute by maintaining a record of Mr. Quatrine's arrest in connection with the terms, conditions, or privileges "of" his employment. The parties stipulated that on January 14, 1980--at which time Mr. Quatrine had been a Shell employee for three years--Shell obtained a copy of the police report describing Mr. Quatrine's arrest. Shell maintained a copy of the report at least until after Mr. Quatrine had been discharged. If, against this background, Mr. Quatrine had been discharged because of the arrest record, and not because Shell believed he was stealing its gasoline, I think Shell's conduct might well have been actionable under Sec. 801 of the Elliott-Larsen Act, M.C.L. Sec. 37.2801. (The latter section says, among other things, that a person alleging a violation of the act may bring an action for "damages for injury or loss caused by each violation....")
 
 
 37
 It is true that at two points in Seals v. Henry Ford Hospital, 123 Mich.App. 329, 333 N.W.2d 272 (1983), the Michigan Court of Appeals spoke of Sec. 205(a) as applying to "prospective" employers. In the next paragraph, however, the court referred to the use of arrest records by "employers." Reading the court's opinion as a whole, and bearing in mind what the Elliott-Larsen Act actually said prior to March 30, 1983, I am inclined to doubt that the Seals court intended to suggest that Sec. 205(a) could not apply to anyone other than a "prospective" employer.
 
 
 38
 Be that as it may, I agree that the district court did not err in granting Shell's motion for summary judgment in the case at bar. If a technical violation of Sec. 205(a) did occur, the violation did not cause any injury or loss to Mr. Quatrine within the meaning of Sec. 801. It is clear that Mr. Quatrine was discharged not because he had an arrest record, but because Shell thought, rightly or wrongly, that Mr. Quatrine had stolen gasoline from it. To suppose that Mr. Quatrine would not have been fired if Shell had merely gone to the police station, inspected the police report there, and left without obtaining a copy of the report would be preposterous. Accordingly, and for all of the other reasons set forth in this court's opinion, I agree that the judgment of the district court ought to be affirmed.
 
 
 
 [1]
 At oral argument, counsel for Quatrine asserted that no formal dismissal of the Union took place. However, because Quatrine agreed to settle with the Union, and made known his intention to dismiss the Union, Shell was justified in removing the case based on the conduct of Quatrine manifesting the discontinuance of the action as to the resident defendant. Heniford v. American Motor Sales Corp., 471 F.Supp. 328, 334-35 (D.S.Car.1979), appeal dismissed, 622 F.2d 584 (4th Cir.1980)